OPINION
{¶ 1} Defendant-appellants Eric and Cynthia Cromwell appeal from the December 23, 2003, Judgment Entry of the Muskingum County Court of Common Pleas granting the Motion for Summary Judgment filed by plaintiff-appellee Catherine Murphy while denying that filed by defendants-appellants.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellants Eric and Cynthia Cromwell are the title owners of real property located at 426 Harding Road in Zanesville, Ohio, which they purchased in 1974. Appellee Catherine Murphy has been the title owner since 1993 of real property located at 431 Karl Road in Zanesville, Ohio. The two properties are separated by a twenty (20) foot unused alley.
 {¶ 3} At issue in the case sub judice is the ownership of a 6' x 25' strip of land located at the rear of appellee's property. On or about April 27, 2001, appellee sent a letter to appellants stating, in relevant part, as follows:
 {¶ 4} "This is a letter in regard to your planting shrubs or flowers or whatever at the rear of my property, 431 Karl Drive.
 {¶ 5} "Since I have lived here in 1993, I have paid Chemlawn to treat that utility right of way, in an attempt to grow grass there. To an extent, this has been successful. I have also paid my lawncare people to cut the grass in the right of way.
 {¶ 6} "When I talked with Mr. Cromwell some weeks ago, I mentioned then, that the utility right of way was part of my property and that I pay taxes on that area, and that you could put nothing there to cross the right of way, North to South.
 {¶ 7} "Since then, you have proceeded to lay out a space and killed grass in that area for your use. I have been informed at the Recorder's Office and the Engineer's Office, that I am correct in asking you to cease whatever you intend to plant there. Your property line ends on the North side of the utility right of way, which would be at Mr. Jacob's fence. I have also instructed my grass cutters to cuty [sic] my property from fence line to fence line, so anything you plant across the utility right of way or in the right of way, will be destroyed.
 {¶ 8} "Should you have any questions about this, I recommend that you check your deed regarding your properly line and the utility right of way. Viewing the plot plan in the Recorder's Office and Engineer's Office, clearly shows the property boundries [sic], the utility right of way and an alley."
 {¶ 9} After appellants failed to respond, appellee, on June 26, 2002, filed a complaint against appellants in the Muskingum County Court of Common Pleas. Appellee, in her complaint, alleged that appellants had unlawfully kept her out of possession of her property and had trespassed upon the same. Appellee, in her complaint, sought both monetary damages and injunctive relief.
 {¶ 10} On July 25, 2002, appellants filed an answer and counterclaim. Appellants, in their counterclaim, alleged that they had acquired title to the 6' x 25' strip of land by adverse possession.
 {¶ 11} Both parties filed Motions for Summary Judgment. As memorialized in a Judgment Entry filed on December 23, 2003, the trial court granted appellee's motion while denying that filed by appellants.
 {¶ 12} It is from the trial court's December 23, 2003, Judgment Entry that appellants now appeal, raising the following assignment of error:
 {¶ 13} "I. The trial court erred when it granted plaintiff's Motion for Summary Judgment and denied defendant's [sic] motion for Summary Judgment on defendant's [sic] counter-claim of adverse possession."
 STANDARD OF REVIEW {¶ 14} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 15} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421,429, 1997-Ohio-259, 674 N.E.2d 1164, citing Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264.
 {¶ 16} It is pursuant to this standard that we review appellants' assignment of error.
 I {¶ 17} Appellants, in their sole assignment of error, argue that the trial court erred in granting appellee's Motion for Summary Judgment while denying that filed by appellants. We disagree.
 {¶ 18} At issue in this case is whether appellants acquired title to a 6' x 25' portion of appellee's property by adverse possession. To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twentyone years. Grace v. Koch, 81 Ohio St.3d 577, 580-581,1998-Ohio-607, 692 N.E.2d 1009. To establish adversity, "the tenant must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest." Id. at 581. It "is the visible and adverse possession with an intent to possess that constitutes [the occupancy's] adverse character . . ."Humphries v. Huffman (1878), 33 Ohio St. 395, 402. In addition, the occupancy "must be such as to give notice to the real owner of the extent of the adverse claim." Id. at 404. Actual notice of adverse possession on the part of the title owner is not required since "[t]he owner is charged with knowledge of adverse use when one enters into open and notorious possession of the land under a claim of right." Vanasdal v. Brinker (1985),27 Ohio App.3d 298, 299, 500 N.E.2d 876.
 {¶ 19} In the case sub judice, the trial court, in its December 23, 2003, Judgment Entry, specifically found that appellants' use of the disputed property was "insufficient to establish adverse possession." Appellant Eric Cromwell, in his deposition,[1] when asked what uses he had made of the 6' x 25' strip of property since 1974, testified that he had mowed and raked the property and had fertilized it "[p]robably every year, two or three times a year." Deposition of Eric Cromwell at 11. Appellant Eric Cromwell further testified that he picked up sticks on the property, walked the dog across the property, and "probably" put lawn seed on the same. Id. The following is an excerpt from appellant Eric Cromwell's deposition testimony:
 {¶ 20} "Q. Now, have you ever attempted to keep Catherine Murphy from walking across that property? And that's I'm talking specifically about that strip of ground.
 {¶ 21} "A. No.
 {¶ 22} "Q. Have you ever tried to stop anyone from walking across that strip of ground?
 {¶ 23} "A. No. Deposition of Eric Cromwell at 17. Appellant Eric Cromwell was unable to recall whether he ever planted any plants on the strip prior to April of 2001, when he received the letter from appellee, although he thought that he had the plants in "maybe a couple of weeks or a month before the letter came in." Deposition of Eric Cromwell at 23. While appellee Catherine Murphy testified in her deposition that she had the disputed strip mowed, appellant Eric Cromwell testified that he had never observed the disputed strip mowed by anyone on Catherine Murphy's behalf.
 {¶ 24} During her deposition, appellant Cynthia Cromwell testified that, since 1974, in addition to the uses of the disputed property outlined by her husband, their children played on the property. According to appellant Cynthia Cromwell, when appellants moved into their house in April of 1974, both the alley and the disputed strip were overgrown with brambles, poison ivy and bits of pottery. Appellant Cynthia Cromwell testified that she and her husband cleaned up the property and used the same as an extension of their back yard and that they never prevented appellee from walking on the disputed strip of land since "[i]t's there for everyone to enjoy." Deposition of Cynthia Cromwell at 9. The following is an excerpt from appellant Cynthia Cromwell's deposition testimony:
 {¶ 25} "Q. Have you ever observed anyone on Catherine Murphy's behalf mowing the lawn back there from what she's referred to as fence to fence?
 {¶ 26} "A. Her mowers mowed from east to west fence.
 {¶ 27} "Q. And by east to west, you're talking about?
 {¶ 28} "A. Mrs. Gialdini, over to her west side. I don't know what the people's name that live on the other side of her.
 {¶ 29} "Q. What about the fence that runs in the middle of the alley along Mr. Karl Jacob's property?
 {¶ 30} "A. Within the last two years since all of this started, they have started to maintain that area.
 {¶ 31} "Q. Have you ever seen anyone mow prior to that?
 {¶ 32} "A. No.
 {¶ 33} "Q. You were present when Catherine Murphy described gong into this area and removing three feet worth of leaves and taking 60 bags of leaves away.
 {¶ 34} "A. I wasn't there when she did it, no.
 {¶ 35} "Q. Do you know if there was any collection of three feet of leaves?
 {¶ 36} "A. There was a bunch of leaves back there. Yes. But there has been leaves back there. She has a lot of trees.
 {¶ 37} "Q. So as to that strip of ground that's involved when she moved in in 1993, was there a pile of leaves back there?
 {¶ 38} "A. Not on that particular strip, no, because we had been maintaining it.
 {¶ 39} "Q. So you're claiming it wasn't on the —
 {¶ 40} "A. Not on that particular strip of land, no. In her yard, yes, in her main part of her yard. On that strip of ground, no.
 {¶ 41} "Q. And to your knowledge when she moved in there was no snow fence there ever in place?
 {¶ 42} "A. No. No, I'm —
 {¶ 43} "Q. You're positive of that.
 {¶ 44} "A. I'm not 100 percent positive, but I do not believe that it was there.
 {¶ 45} "Q. Did you ever or your husband, to your knowledge, stop anyone from cutting the grass along the alley as it fits up to Mr. Jacobson's property?
 {¶ 46} "A. No.
 {¶ 47} "Q. Or on across to the area that's referred to in the lawsuit?
 {¶ 48} "A. No.
 {¶ 49} "Q. So you never stopped anybody from cutting the grass?
 {¶ 50} "A. Oh, no.
 {¶ 51} "Q. And you specifically didn't stop Catherine Murphy from walking across the property, planting grass seed on the property?
 {¶ 52} "A. We never stopped her. But I don't believe it was ever done in that particular area.
 {¶ 53} "Q. All right. So you just don't think it was done, but you didn't stop her and never stopped her from crossing that property or using that property for any reason?
 {¶ 54} "A. No. Deposition of Cynthia Cromwell at 10-12.
 {¶ 55} Mere maintenance of land, such as mowing grass, cutting weeds, planting a few seedlings, and minor landscaping, is generally not sufficient to constitute adverse possession. SeeMontieth v. Twin Falls United Methodist Church (1980),68 Ohio App.2d 219, 428 N.E.2d 870; Meyer v. Pockros (1924),18 Ohio App. 506, Robinson v. Armstrong, Guernsey App. No. 03CA12, 2004-Ohio-1463. In Grace, supra, the Ohio Supreme Court found that mowing grass, parking cars, recreational use, and placement of firewood, oil drums, and a swing set on a strip of land presented a close case. The Court, in Grace, concluded, however, that the record did not contain clear and convincing evidence that the Graces, the title owners, were on notice that their dominions had been invaded and thus that adverse possession had not been established.
 {¶ 56} Based on the foregoing, we find that the trial court correctly held that appellants failed to prove, by clear and convincing evidence, that their use of the property was adverse to appellee, the titled owner.
 {¶ 57} Based on foregoing, we find that the trial court did not err in granting appellee's Motion for Summary Judgment.
 {¶ 58} Appellants' sole assignment of error is, therefore, overruled.
 {¶ 59} Accordingly, the judgment of the Muskingum County Court of Common Pleas is affirmed.
Edwards, J., Gwin, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Muskingum County Court of Common Pleas is affirmed. Costs assessed to appellants.
[1] The depositions of appellants Eric and Cynthia Cromwell and appellee Catherine Murphy were filed with the trial court.