[Cite as *Arnholt v. Carlisle*, 2011-Ohio-2948.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| WILLIAM ARNHOLT, et al. | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiffs-Appellees | Hon. William B. Hoffman, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 10 CA 91 |
| JOHN CARLISLE | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                             Pleas, Case No.  08 CV 1045


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      June 6, 2011


APPEARANCES:

For Plaintiffs-Appellees          For Defendant-Appellant

J. ANDREW CRAWFORD                DAVID Q. WIGGINTON
REESE, PYLE, DRAKE & MEYER        SCHALLER, CAMPBELL & UNTIED
Post Office Box 919               Post Office Box 309
36 North 2nd Street               32 North Park Place
Newark, Ohio  43058-0919         Newark, Ohio  43055

*Wise, J.*

{¶1} Defendant-Appellant John Carlisle appeals from the decision of the Licking County Court of Common Pleas, granting a claim of adverse possession over part of his real property in favor of Plaintiffs-Appellees William Arnholt, et al. The relevant facts leading to this appeal are as follows.

{¶2} In 1973, Appellee William Arnholt and his then-wife, Marie K. Arnholt, purchased approximately 5.8 acres of land at 6961 Palmer Road in a rural area of Etna Township, Licking County, for the purpose of building their marital residence. The residence was completed in the summer of 1976, at which time appellee and Marie moved in. The couple remained there until 1993, when they were divorced. Pursuant to their divorce decree, Marie continued to reside in the home until 1995, at which time the youngest child became emancipated. In 1995, appellee and his present wife, Gail Arnholt, took possession of the home.

{¶3} The record reveals the existence of a natural stream running at the south-southeastern rear edge of appellees' Palmer Road property. South of the stream is an old barbed-wire farm fence that appellee began treating as the southern boundary line of the property after he purchased his acreage.[1] At that time, the area around the stream had only a few trees; appellee over the years planted as many as 150 saplings near the sides of the stream. He also buttressed the stream banks with old bricks and tiles. Appellee additionally began mowing the area behind the house south to the aforesaid farm fence on the far side of the stream. Appellee also stored construction materials and automobiles not far from the stream. Essentially, the present disputed

---

[1] We will herein refer to William Arnholt as "appellee" or "Appellee Arnholt," in the singular.

area is (1) a wedge-shaped extension of appellees' back yard, due south of the original southern boundary of appellees' parcel and north and west of said farm fence, and (2) a strip of land extending therefrom along the creek in roughly a southwest to northeast fashion, also north and west of the farm fence.

{¶4} Appellant Carlisle is the owner of an adjoining parcel upon which sits the disputed area. The parcel was previously owned by Donald Householder; after a foreclosure action in 2008, the Householder property was sold to appellant. In the spring of that year, appellant considered building a small bridge over the stream and clearing some brush from that area. Appellant contracted for the services of a surveyor in May 2008, and several arguments thereafter broke out between appellant and appellees.

{¶5} On May 21, 2008, appellees filed a complaint in the Licking County Court of Common Pleas alleging civil trespass and seeking title to the disputed property area on the grounds of adverse possession. On July 1, 2008, appellees filed their first amended complaint. On July 8, 2008, appellant filed an answer and counterclaim, and an amended answer and counterclaim the next day. Appellees filed a second amended complaint on September 21, 2009. Appellant filed an answer and counterclaim thereto on September 28, 2009.

{¶6} Both sides filed motions for summary judgment on February 16, 2010. Both motions were denied on April 12, 2010.

{¶7} The matter proceeded to a trial commencing on June 29, 2010. Pursuant to a motion in limine filed by appellees, the trial court limited the testimony of appellee's former wife Marie K. Arnholt to her personal knowledge concerning the property boundaries. Appellant's counsel proffered Marie's testimony, outside of the jury's

presence, regarding her asserted lack of intent to claim the adverse possession property.

{¶8} At the close of appellees' evidence, appellant moved for a directed verdict, which the trial court denied.

{¶9} At the conclusion of the evidence, the jury found, inter alia, in favor of appellees on their claim for adverse possession. The court thereupon issued an order directing appellees to obtain a legal description of the property and to prepare a final judgment entry.

{¶10} On August 12, 2010, appellant filed a notice of appeal. He herein raises the following four Assignments of Error:

{¶11} "I. THE JURY'S CONCLUSION THAT THE APPELLEES ADVERSELY POSSESSED THE PROPERTY OF THE APPELLANT SUCH THAT THEY RECEIVED TITLE TO THE PROPERTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶12} "II. THE TRIAL COURT ERRED IN ITS TREATMENT OF THE TESTIMONY OF MARIE K. ARNHOLT BY GRANTING [APPELLEES'] MOTION IN LIMINE PROHIBITING THE TESTIMONY OF KATHY ARNHOLT REGARDING HER INTENTIONS WITH REGARD TO THE PROPERTY, LIMITING HER TESTIMONY AT TRIAL, AND FAILING TO FIND THAT [APPELLANT] WAS ENTITLED TO SUMMARY JUDGMENT.

{¶13} "III. THE JURY'S CONCLUSION THAT THE [APPELLEES] 'ADVERSELY POSSESSED' THE PROPERTY SOUTH AND EAST OF THE STREAM WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶14}** "VI.  THE COURT ERRED BY FAILING TO GRANT APPELLANT'S MOTION FOR DIRECTED VERDICT AT THE CLOSE OF ALL THE EVIDENCE BASED UPON THE APPELLEE'S FAILURE TO SUBMIT SUFFICIENT EVIDENCE REGARDING THE BOUNDARY OF THE ADVERSELY POSSESSED PROPERTY. ALTERNATIVELY, THE DECISION OF THE JURY REGARDING THE BOUNDARIES OF THE PROPERTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

**{¶15}** In his First Assignment of Error, appellant argues the jury's finding that appellees had proven their claim of adverse possession was against the manifest weight of the evidence. We disagree.

**{¶16}** As a general rule, we neither weigh the evidence nor judge the credibility of the witnesses in analyzing manifest weight arguments in civil cases. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Witt v. Watson,* Stark App.No. 2004 CA 00297, 2005-Ohio-3290, ¶ 18, citing *Cross Truck v. Jeffries* (February 10, 1982), Stark App.No. CA-5758. See, also, *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 376, 376 N.E.2d 578.

**{¶17}** To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years. *Grace v. Koch* (1998), 81 Ohio St.3d 577, 692 N.E.2d 1009. Failure of proof as to any of the elements results in failure to acquire title by adverse possession. Id. at 579, citing *Pennsylvania Rd. Co. v. Donovan,* 111 Ohio St. 341, 349-350, 145 N.E. 479. Furthermore, "[a] successful adverse possession

action results in a legal titleholder forfeiting ownership to an adverse holder without compensation. Such a doctrine should be disfavored, and that is why the elements of adverse possession are stringent." Id. at 580.

{¶18} In the case sub judice, appellees presented evidence of their following activities on the disputed property:

| Use | Dates of use |
|---|---|
| Tree planting and growth of trees | 1976-2008 |
| Mowing to stream | 1976-2008 |
| Reinforce stream bank | Late 70's-2008 |
| Store Volkswagen vehicles | 1978-1988 |
| Store construction materials | 1981-1998 |
| Construct and maintain grape arbor | 1984-2008 |
| Construct encroaching barn | 1996-2008 |
| Construct levy and creek pond | 1997-2008 |

{¶19} Appellant presents two basic challenges to the jury's finding of adverse possession in the case sub judice: First, appellant contends that Appellee Arnholt did not occupy the residence and property in question from May 1993 until October 1995, a period of approximately thirty months, and thus the continuousness requirement of adverse possession was not met. Secondly, appellant maintains that appellees did not demonstrate when Arnholt's actions of tree planting first became adverse for purposes of meeting the twenty-one-year requirement.

{¶20} In regard to appellant's first challenge, it is well-established that in seeking to establish the necessary twenty-one year period, a party may add his own term of adverse use to any period of adverse use by a prior succeeding owner in privity with the current owner. See *Wetzler v. Eagleson's, Inc.,* Guernsey App. No. 01 CA14, 2002-Ohio-1838, citing *Zipf v. Dalgarn* (1926), 114 Ohio St. 291, 151 N.E. 174. The chain of adverse use by succeeding owners is known as tacking, and the chain may not be

broken. Id. In addition, "[a]n adverse possessor need only establish an occupation or use of the land that would be made by an owner of the same type of land, taking into account the uses for which the land is suited." *King v. Hazen*, Ashtabula App.No. 2005-A-0031, 2006-Ohio-4823, ¶ 61, citing *Allison v. Shepherd* (1979), 285 Ore. 447, 451-452, 591 P.2d 735, 738.

{¶21} As noted in our recitation of facts, Appellee Arnholt was dispossessed of the Palmer Road house and property for thirty months in the period of 1993 to 1995, pursuant to the terms of his divorce from Marie Arnholt. During that time, he ceased his tree-planting activities, did not mow the grass, and did not add construction materials to the disputed outside storage area. However, upon our review of the record, photographic exhibits, and transcript, we find the jury could have at least properly concluded that tacking was proven during the thirty months in question. The large numbers of trees planted by Appellee Arnholt continued to thrive on areas then owned by Householder, appellant's predecessor in interest, and even though Arnholt did not access the construction materials stored on the adverse possession property, there is no demonstration in the record that he abandoned these materials during the thirty month period. Furthermore, Marie and the children continued to mow the now-disputed area down to the creek bank, and the burn pit continued to be used. During Marie's possession of the property, additional items such as a truck cap and some animal kennels were added to the area in question. We thus find no basis to disturb the jury's conclusion on this basis.

{¶22} In regard to appellant's second "manifest weight" challenge, we have recognized that "[i]n order for possession to be considered open, the use of the disputed

property must be without attempted concealment. * * * To be notorious, a use must be known to some who might reasonably be expected to communicate their knowledge to the owner * * * [or] so patent that the true owner of the property could not be deceived as to the property's use." *Franklin v. Massillon Homes II, L.L.C.* 184 Ohio App.3d 455, 461, 921 N.E.2d 314, 2009-Ohio-5487, citing *Kaufman v. Geisken Ents., Ltd.*, Putnam App. No. 12-02-04, 2003-Ohio-1027, ¶ 31 (internal quotations omitted). Appellant essentially urges that Appellee Arnholt's hardwood tree planting, particularly during the first few years, was not significant enough to demonstrate a commencement of open and notorious adverse use, taking into consideration the rural residential environs of Palmer Road. However, appellees presented testimony from Arnholt's sister and brother-in-law that the area in question was originally mostly open, with a smattering of large mature trees, allowing the jury to conclude that the ongoing sapling planting would have been visible to Householder and other interested observers. Furthermore, because the action was not filed until 2008, the jury could have utilized any date between 1976 and 1987 as the starting point for the commencement of Arnholt's open and notorious tree planting to meet the prerequisites for appellees' adverse possession claim.

{¶23} Accordingly, appellant's First Assignment of Error is overruled.

II.

{¶24} In his Second Assignment of Error, appellant argues the trial court erred in its treatment of the testimony of Appellee's former spouse, Marie K. Arnholt, by granting appellees' motion in limine prohibiting the testimony of Marie regarding her intentions

with regard to the property, limiting her testimony at trial, and failing to find that appellant was entitled to summary judgment. We disagree.

**{¶25}** This Court has recognized that Ohio law does not require proof of subjective purpose in a claim of adverse possession. See, e.g., *Goodin v. Sforza* (Dec. 6, 1989), Licking App. No. CA-3444, 1989 WL 154646, citing *Yetzer v. Thoman* (1866), 17 Ohio St. 130. Also, when a boundary line is in dispute, it is not necessary to show knowledge or wrongful intent on the part of the adverse claimant. See *Keller v. Russell* (June 9, 2000), Scioto App.No. 99 CA 2659, citing *Coburn v. Gebauer* (Jan. 11, 1996), Seneca App. No. 13-95-14; *Goetz v. Miller* (Apr. 24, 1981), Ottawa App. No. OT-80-26. In *Evanich v. Bridge*, 119 Ohio St.3d 260, 893 N.E.2d 481, the Ohio Supreme Court held, at the syllabus: "In a claim for adverse possession, *the intent to possess another's property is objective rather than subjective,* and the legal requirement that possession be adverse is satisfied by clear and convincing evidence that for 21 years the claimant possessed property and treated it as the claimant's own." (Emphasis added).

**{¶26}** As discussed in appellant's first assigned error, the record provides competent, credible evidence of Appellee Arnholt's tacking and continued in absentia use of the adverse possession property during the 1993 through 1995 period. We thus find additional discussion of the issue of Marie's testimony to be merely academic. In other words, the jury's finding of adverse possession was supported by evidence of continuous use regardless of Marie's claimed lack of subjective intent to claim ownership of the property in question.

**{¶27}** Appellant nonetheless argues that *Evanich*, supra, addresses only the issue of the claimant's intent in a case of mutual mistake of boundary, and does not

apply to the present situation wherein Marie Arnholt was a temporary possessor. Appellant also theorizes that allowing tacking via a temporary possessor who lacks subjective intent would invite cases of "involuntary" adverse possession. However, we find these arguments unpersuasive.

{¶28} We thus turn to the question of the denial of summary judgment. Such proceedings present an appellate court with the opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. We refer to Civ.R. 56, which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶29} Appellant maintains that Marie Arnholt's summary judgment affidavit unequivocally shows she did not intend to possess the adverse possession property during the time she possessed the Palmer Road property. However, based on our above conclusions regarding the issue of the motion in limine and the fact that the case proceeded to a full jury trial and verdict, we find further redress of summary judgment to be unnecessary. See *Sanders v. Mt. Sinai Hospital* (1985), 21 Ohio App.3d 249, 256.

{¶30} Accordingly, appellant's Second Assignment of Error is overruled.

III.

{¶31} In his Third Assignment of Error, appellant challenges the jury's finding that appellees proved their claim of adverse possession regarding the portion of land south and east of the stream, i.e., the strip between the stream and the old fence.

{¶32} We reiterate that as a general rule, we neither weigh the evidence nor judge the credibility of the witnesses in analyzing manifest weight arguments in civil cases. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Witt*, supra, at ¶ 18.

{¶33} It is well-established that an adverse possessor's claim is limited to the property actually occupied or possessed. See, e.g., *Oeltjen v. Akron Associated Inv. Co.* (1958), 106 Ohio App. 128. In the case sub judice, the judgment entry describes the adverse possession property as "being bounded *** on the south by an old barbed wire occupation fence which runs along the south side of the small creek, and the jury was so instructed." Judgment Entry, August 11, 2010, at 1.

{¶34} Appellant asserts that the only use of the land area on the south and east side of the stream, on the opposite side from appellees' house, was Arnholt's tree planting. We have indeed recognized that "[m]ere maintenance of land, such as mowing grass, cutting weeds, and minor landscaping, is generally not sufficient to constitute adverse possession." See *Nixon v. Parker*, Licking App.No. 04 CA 84, 2005-Ohio-2375, ¶ 22, citing *Murphy v. Cromwell*, Muskingum App. No. CT2004-0003, 2004-Ohio-6279, ¶ 55 (additional citations omitted). However, the record reveals testimony that Arnholt planted approximately one-hundred trees in the south-of-the-stream area, particularly

during the mid-seventies through the mid-eighties. See Tr. at 194-195, 381-382. See, also, the map admitted as Plaintiffs' Exh. 14. This effectively turned the area from a fallow open field space into a wooded one. See Tr. at 307-308. Arnholt noted that he had always been interested in arborist pursuits, and he specifically planted a variety of hardwood species. See Tr. at 157-158, 191-192. Accordingly, we find the evidence in this instance supported the conclusion that Arnholt's planting and subsequent caretaking actions regarding the trees to the south of the stream went beyond "mere maintenance" and minor landscaping, such that the finding of adverse possession in that area was not against the manifest weight of the evidence.

{¶35} Appellant's Third Assignment of Error is overruled.

IV.

{¶36} In his Fourth Assignment of Error, appellant argues that the trial court erred in denying his motion for directed verdict, or, in the alternative, that the jury's findings as to property boundaries were against the manifest weight of the evidence. We disagree.

{¶37} Based on the structure of appellant's assigned error, we must herein recite two standards of review. The standard of review for the grant or denial of a motion for a directed verdict is whether there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the non-movant. *Brown v. Guarantee Title & Trust/Arta* (Aug. 28, 1996), Fairfield App.No. 94-41, citing *Sanek v. Duracote Corp.* (1989), 43 Ohio St .3d 169, 172, 539 N.E.2d 1114. A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a

de novo review of the lower court's judgment. *Howell v. Dayton Power & Light Co.* (1995), 102 Ohio App.3d 6, 13, 656 N.E.2d 957, 961. However, in analyzing manifest weight arguments in civil cases, our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Witt*, supra, at ¶ 18.

{¶38} Appellant claims that appellees relied upon "scant evidence" regarding the locations of the southern and western boundaries of the adverse possession property. Appellant's Brief at 23. He maintains this is confirmed by the court's order, after the trial, that appellees obtain a land survey and legal description to formally establish the new boundaries of appellees' property.

{¶39} The record reveals that the jury in this matter was given the following instruction, without objection by either side:

{¶40} "The adverse possession property is bounded on the north by the south and southeast deeded property lines contained in the Arnholts' deed, on the east and west by an extension south of the east and west deeded property lines contained in the Arnholts' deed, and on the south by an old barbed wire occupation fence which runs along the south side of a small creek." Tr. at 696.

{¶41} Both sides direct us to *Galehouse v. Geiser*, Wayne App.No. 05CA0037, 2006-Ohio-766, in which the Ninth District Court of Appeals approved a trial court's directive to obtain a post-judgment survey of the adverse possession area. Although appellant seeks to distinguish *Galehouse* on its facts, we agree with appellees that the case supports the trial court's decision in the case sub judice. Upon review of the substantial photographic, video, and testimonial evidence in the present record of the

location of the old fence and any other challenged boundaries, we find there was evidence presented which would at least permit reasonable minds to come to different conclusions as to the element of the lower boundaries of the property. Therefore, the trial court properly denied appellant's motion for directed verdict. We further hold the jury's subsequent conclusions regarding the adverse possession boundaries were not against the manifest weight of the evidence.

{¶42} Appellant's Fourth Assignment of Error is overruled.

{¶43} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Licking County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.

_____

_____

_____

JUDGES

JWW/d 0512

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


WILLIAM ARNHOLT, et al.                    :
                                           :
        Plaintiffs-Appellees               :
                                           :
-vs-                                       :              JUDGMENT ENTRY
                                           :
JOHN CARLISLE                              :
                                           :
        Defendant-Appellant                :              Case No. 10 CA 91


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.

Costs assessed to appellant.


_____

_____

_____
                                           JUDGES