[Cite as *McKenna v. Boyce*, 2012-Ohio-5163.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | : | JUDGES: |
| KEVIN H. McKENNA AND LINDA S. | : | W. Scott Gwin, P.J. |
| (MADDEN) McKENNA | : | William B. Hoffman, J. |
| | : | Julie A. Edwards, J. |
| Plaintiffs-Appellants | : | |
| | : | Case No. CT 2012-0014 |
| -vs- | : | |
| | : | |
| | : | O P I N I O N |
| JARROD D. BOYCE AND MELISSA | | |
| M. BOYCE, et al., | | |
| | | |
| Defendants-Appellees | | |

CHARACTER OF PROCEEDING:     Civil Appeal from Muskingum County
Court of Common Pleas Case No.
CC2011-0305

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     October 30, 2012

APPEARANCES:

For Plaintiffs-Appellants     For Defendants-Appellees

PETER N. CULTICE     JAN ALLEN BAUGHMAN
Cultice Law Firm     Allen, Baughman & Martin
58 N. Fifth Street     58 N. 5th Street, Heritage Suites
Zanesville, Ohio  43701     Suite 102
     Zanesville, Ohio  43701

*Edwards, J.*

**{¶1}** Plaintiffs-appellants, Kevin McKenna and Linda (Madden) McKenna, appeal from the February 1, 2012, Judgment Entry of the Muskingum County Court of Common Pleas granting the Motion for Summary Judgment filed by defendants-appellees Jarrod and Melissa Boyce while denying the Motion for Summary Judgment filed by plaintiff-appellants.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellants are the owners of real property located at 4885 Adamsville Road in Zanesville, Ohio. Appellants acquired title to such property in 1980. Appellees are the owners of real property located at 4855 Adamsville Road in Zanesville, Ohio. Appellees acquired title to the property in August of 2008.

**{¶3}** The chain of title to appellees' property is as follows:

**{¶4}** Warranty deed recorded August 11, 1976 transferring property from Allan W. Spencer and Mary A. Spencer to Cecil B. Bennett and Emma Bennett.

**{¶5}** Warranty deed transferring property on September 22, 2000 from the Bennetts to Larry and Diane Walls.

**{¶6}** Warranty deed transferring property on June 13, 2003 from Larry Walls to James Harris and Lisa Harris.

**{¶7}** Deed on Decree or Order of Sale transferring property on July 5, 2007, from Muskingum County Sheriff to U.S. National Bank Association as Trustee for Credit Suisse First Boston.

**{¶8}** Special Warranty deed recorded on October 30, 2007 transferring title from U.S. National Bank Association, as Trustee, to Danny L. and Kathryn L Boyce.

{¶9}   Warranty deed recorded on August 29, 2008 transferring property from Danny L. and Kathryn L. Boyce to appellees.

{¶10}  In turn, the chain of title to appellants' property is as follows:

{¶11}  Warranty deed recorded on June 18, 1957 transferring title from Herbert Reed and Adda Reed to Earl Schenk.

{¶12}  Warranty deed recorded on June 15, 1964 transferring title from Earl and Dorothy Schenk to Robert and Caterine Ferguson.

{¶13}  Warranty deed recorded on September 3, 1980 transferring title from Robert and Caterine Ferguson to appellants.

{¶14}  In 2010, appellees, who were planning on erecting a fence around their property, hired professional surveyor Peter Dinan to conduct a survey of their property after an issue arose over the property line.  Dinan marked appellees' property lines, including the northern property line which is the dividing line between appellants' property and appellees' property. Dinan determined that the property line between the two properties was the same line as described in previous deeds dating back to 1957. The property had been originally surveyed in 1957 and also in 2003. In his affidavit, Dinan stated, in relevant part, as follows:

{¶15}  "5. On September 7, 2010, I went to the Boyce property to perform the survey.

{¶16}  "6. As is my usual custom, I first drove past the property to see what I could observe from the road  From the road, I noticed that one corner (the front northern side of the Boyce property) was marked by a 1" x 2" x 4' lath (tomato stake) visible from the road.  I observed a line of pine trees.  I also noticed a distinct line indicating how the

grass had been mowed by the property owners to the north (the McKennas), from a telephone pole at the front of the property to a line of pine trees. I saw no evidence of a mow line from the McKenna side that extended past (or south of) the pine trees.

{¶17} "7. I then pulled into the Boyce property and started my survey work. I went to the lath that I had observed from the road and established the first point. At the location of that lath was an axle placed by surveyor A.T. Connor in 1957. The axle was somewhat covered by sod, but was easy to locate due to the 4 foot lath with a pink ribbon at its top. Additionally, there was no vegetation or other thing obstructing the visibility of the lath.

{¶18} "8. From the starting point, I continued counter clockwise around the property. I took the deed distances and went around the whole circumference of the Boyce property. I located steel pins and located all 4 axles that had been in place since being set by surveyor A.T. Connor in 1957. The axle at the northwest corner (between the McKenna and Boyce properties and opposite the first axle I located at the northeast corner) was well-marked above ground and had a plastic bucket around it.

{¶19} "9. I had no trouble establishing the property lines, and set approximately four 4 foot long 1" x 2" lath along the property line between the Boyce and McKenna properties.

{¶20} "10. The property line that I located and established for Jarrod Boyce between his and the McKenna property is absolutely the same line as described in previous deeds dating back to the original split of the property in 1957.

{¶21} "11. The survey monuments as personally located by me are the same survey monuments as described in previous deeds and as were present and

established by surveyor A.T. Connor in 1957 (whose name and monuments are described as well in the current deed of record for Jarrod Boyce and Melissa Boyce).

**{¶22}** "12. A clearly visible line of pine trees stands between the Boyce and McKenna residences.  With respect to the pine trees and the legally described property line dividing the Boyce and McKenna properties, the following is true:

**{¶23}** "a. from the axle at the northeast corner (nearest Adamsville Road) to the first pine tree, the first pine tree stands upon the deed line (the deed lines goes through the tree);

**{¶24}** "b. the remainder of the pine trees, to the back of the property, stand upon the Boyce property (the deed line is north of the trees; the trees are south of the deed line);

**{¶25}** "c. at the back of the property, to the axle at the northwest corner, there are pine trees again upon the deed line."

**{¶26}** The trees that Dinan referred to were planted in the mid 1960's as a windbreak by Wayne Burr, Jr. and his father, who resided at 4885 Adamsville Road, which is now appellant's property.  Burr and his wife held a brief land contract.  The row of trees runs the length of the property.

**{¶27}** In the Spring of 1981, Cecil Bennett allegedly had indicated to appellants that  an east/westerly line of shrubs that was situated approximately ten (10) feet south of the southern tree line designated the properly line between the two subject properties. Appellants asserted that they owned, through adverse possession, the .205 acres located between their property and appellees' property.  The strip extended at its

widest point 18.9 feet beyond the record property line and tree line onto appellees' property.

**{¶28}** On May 27, 2011, appellants filed a "Complaint to Quiet Title, Adverse Possession, Trespass and Damages" against appellees and against Danny and Kathryn Boyce. The case was a refiled case. The previous case had been voluntarily dismissed by appellants after the trial court denied the parties' respective Motions for Summary Judgment.   Appellant specifically, in their complaint, alleged that they had openly possessed, maintained and treated as their own all of the property that was located north of the shrub line, which consists of approximately .205 acres,  and that appellees had actively trespassed on and damaged and destroyed appellants' property. Appellees filed an answer and counterclaim on June 28, 2011. Appellees, in their counterclaim, asked that if they were evicted or turned out of possession of their land, they be awarded compensation for the value of improvements that they had made to the same prior to the commencement of appellants' suit and that they be granted a prescriptive easement for their septic system.

**{¶29}** On August 30, 2011, appellants file an amended complaint to add the mortgage holder of appellees property.

**{¶30}** On January 6, 2012, appellees filed a Motion for Reconsideration, asking that the trial court reconsider its denial of the Motion for Summary Judgment that they had filed in the previous case. On the same date, appellees filed a Motion for Summary Judgment. On January 24, 2012, appellants filed a Motion for Summary Judgment and a response to appellees' motion. Pursuant to a Judgment Entry filed on February 1, 2012, the trial court granted appellees' Motion for Reconsideration and their Motion for

Summary Judgment while denying the Motion for Summary Judgment filed by appellants.

**{¶31}** Appellants now raise the following assignment of error on appeal:

**{¶32}** "THE MUSKINGUM COUNTY, OHIO, COURT OF COMMON PLEAS (TRIAL COURT) ERRED AS A MATTER OF LAW IN ITS DECISION GRANTING SUMMARY JUDGMENT TO DEFENDANTS-APPELLEES AND IN NOT GRANTING SUMMARY JUDGMENT TO PLAINTIFFS-APPELLANTS IN FINDING THAT DEFENDANTS-APPELLEES ARE THE LEGAL AND RIGHTFUL OWNERS OF .205 ACRES OF GROUND LOCATED BETWEEN THE HOMES OF PLAINTIFFS-APPELLANTS AND DEFENDANTS-APPELLEES."

I

**{¶33}** Appellants, in their sole assignment of error, argue that the trial court erred in granting summary judgment in favor of appellees while denying appellants' Motion for Summary Judgment on appellants' adverse possession claim. We disagree.

**{¶34}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36, 506 N.E.2d 212, (1987). As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it

appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

**{¶35}** Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 1997–Ohio–259, 674 N.E.2d 1164, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264.

**{¶36}** "To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." *Grace v. Koch*, 81 Ohio St.3d 577, 692 N.E.2d 1009, syllabus (1981).

**{¶37}** In order for possession to be considered open, "the use of the disputed property must be without attempted concealment. * * * To be notorious, a use must be known to some who might reasonably be expected to communicate their knowledge to the owner * * * [or] so patent that the true owner of the property could not be deceived as to the property's use." *Kaufman v. Geisken Enterprises, Ltd.,* 3rd Dist. No. 12-02-04, 2003-Ohio-1027, ¶ 31.

**{¶38}** In order for possession to be considered "hostile", the Ohio Supreme Court has stated that any use of the land inconsistent with the rights of the titleholder is adverse or hostile. *Kimball v. Anderson*, 125 Ohio St. 241, 244, 181 N.E. 17 (1932).

**{¶39}** In order for use to be considered continuous and exclusive, "'[u]se of the property does not have to be exclusive of all individuals. Rather, it must be exclusive of

the true owner entering onto the land and asserting his right to possession. It must also be exclusive of third persons entering the land under their own claim of title, or claiming to have permission to be on the premises from the true title holder. If the title holder enters onto the land without asserting, by word or act, any right of ownership or possession, his presence on the land does not amount to an actual possession, and the possession may properly be attributed to the party who is on the land exercising or claiming exclusive control thereof. It is not necessary that all persons be excluded from entering upon and using the premises.'" *Kaufman,* supra, at ¶ 39, quoting *Walls v. Billingsley*, 3rd Dist. No. 1-92-11, 1992 WL 198131 (Aug. 18, 1992), citing 4 Tiffany, Real Property (1975) 736, Section 1141.

**{¶40}** In order to establish the necessary twenty-one year period, a party may add to their own term of adverse use any period of adverse use by prior succeeding owners in privity with one another. *Zipf v. Dalgarn*, 114 Ohio St. 291, 151 N.E. 174, syllabus (1926).

**{¶41}** Clear and convincing evidence is that proof which establishes in the minds of the trier of fact a firm conviction as to the allegations sought to be proved. *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). Where a party must prove a claim by clear and convincing evidence, a reviewing court must examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof. *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

**{¶42}** Failure of proof on any of the elements of adverse possession results in failure to acquire title by adverse possession. *Grace,* supra at 579. "A successful

adverse possession action results in a legal titleholder forfeiting ownership to an adverse holder without compensation. Such a doctrine should be disfavored, and that is why the elements of adverse possession are stringent." *Id.,* at 580, citing 10 Thompson on Real Property (Thomas Ed. 1994) 108, Section 87.05.

**{¶43}** It is the visible and adverse possession with intent to possess which constitutes the adverse character of the occupancy. *Grace,* 81 Ohio St.3d at 581.  In other words, "'there must have been an intention on the part of the person in possession to *claim title, so manifested* by his declarations or his acts, that a failure of the owner to prosecute within the time limited, raises a presumption of an extinguishment or a surrender of his claim.' (Emphasis sic.)" *Grace,* 81 Ohio St.3d at 581, quoting *Lane v. Kennedy*, 13 Ohio St. 42, 47, 1861 WL 90 (1861). Courts do not require the title owner of the property to receive actual notice of adverse possession as long as that owner is charged with knowledge of adverse use when one enters into open and notorious possession of the land under a claim of right. *Vanasdal v. Brinker*, 27 Ohio App.3d 298, 299, 500 N.E.2d 876 (9th Dist. 1985). The adverse occupancy of the land must be sufficient to notify the real owner of the extent of the adverse claim. *Humphries v. Huffman,* 33 Ohio St. 395, 404, 1878 WL 6 (1878).

**{¶44}** Each case of adverse possession rests on its own peculiar facts. *Bullion v. Gahm,* 164 Ohio App.3d 344, 349, 2005-Ohio-5966, 842 N.E.2d 540, citing *Oeltjen v. Akron Associated Invest. Co.*, 106 Ohio App. 128, 130, 153 N.E.2d 715 (9th Dist. 1958).

**{¶45}** At issue in the case sub judice is whether or not appellants' use of the land was sufficient to establish adverse possession. Mere maintenance of land, such as mowing grass, cutting weeds, planting a few seedlings, and minor landscaping, is

generally not sufficient to constitute adverse possession. See *Montieth v. Twin Falls United Methodist Church*, 68 Ohio App.2d 219, 428 N.E.2d 870 (9th Dist. 1980); *Robinson v. Armstrong,* 5th Dist. No. 03CA12, 2004-Ohio-1463.[1] In *Grace,* supra, the Ohio Supreme Court found that mowing grass, parking cars, recreational use, and placement of firewood, oil drums, and a swing set on a strip of land presented a close case. The Court, in *Grace,* concluded, however, that the record did not contain clear and convincing evidence that the Graces, the title owners, were on notice that their dominions had been invaded and thus that adverse possession had not been established.

{¶46} In *Murphy v. Cromwell*, 5th Dist. No. CT2004-0003, 2004-Ohio-6279, this Court held that the appellants had failed to prove, by clear and convincing evidence, that their use of the property was sufficiently adverse.  The appellants, in *Murphy*, had cleaned up branches, mowed and raked the property, walked the dog across the property and fertilized the same.

{¶47} In the case sub judice, appellants alleged that their possession of the .205 acres at issue commenced in the spring of 1981 when Cecil Bennett allegedly told them where the property line between their property and appellees' property was located. Both appellants, in their affidavits attached to their January 24, 2012 Motion for Summary Judgment, indicated that since approximately the Spring of 1981, they had "…openly and exclusively maintained property which lies north of the mutually respected property boundary specified by a east/west line of shrubs approximately eight to ten feet south of approximately the entire length of the line of pine trees between the

---

[1] See also, *Nixon v. Parker*, 5th Dist. No. 04 CA 84, 2005-Ohio-2375.  In *Nixon*, this Court held that mowing and flower gardening were insufficient to constitute adverse possession.

properties knows as 4855 Adamsville Road and known as 4885 Adamsville Road as our own property, which includes open and exclusive exercise of dominion over the notorious 'landmark' line of pine trees as property of 4885 Adamsville Road that have existed approximately eight to ten feet north of that same line of shrubs."

**{¶48}** During her deposition, appellant Linda (Madden) McKenna testified as follows when asked how she had laid claim to the property since 1981:

**{¶49}** "A. I maintained it. I mowed. I picked up branches, and those pine trees are - - you know, they're 45 years old, so they're big. When the branches come down, you're talking 10, 12 feet of branches I would pull over on the side; and my dad would come over, and we'd load them up and carry them out.

**{¶50}** "Q. Okay. Did you do anything else to evidence that you believed you owned that area, anything other than the mowing or the picking up of the branches?

**{¶51}** "A. We would rake - - oh. When we first - - like a few years after we were there, the tree roots – dirt needed filled in, so we filled that in to try to make it level and nice when we was mowing on it.

**{¶52}** "As the years went by and the trees have aged, the roots are showing again, which is so big we can't keep up with. We'd have to bring in a lot of topsoil to fill it in.

**{¶53}** "Q. Okay. Anything other than the picking up of the branches or the roots or the mowing?

**{¶54}** "A. We would trim, I mean, you know, trim around, and we would - - any branches that would come down that needed cut off - - you know what I mean? - - that

wouldn't break clear off, we would cut them."   Deposition of appellant Linda (Madden) McKenna at 11-12.

**{¶55}** When asked what other uses she made of the disputed property, she testified that, other than maintaining the same, "[n]othing. I mean, it was just like the rest of the yard. I mean, it was just part of the property." Id at. 13.

**{¶56}** In turn, the following testimony was adduced when appellant Kevin McKenna was asked how he laid claim to the disputed area from 1981 on:

**{¶57}** "Q. Did you do anything to make it yours?

**{¶58}** "A. Treated it as every other square foot of property we own.

**{¶59}** "Q. Okay.  And how is that then?

**{¶60}** "A. Whatever it needed: Mowing grass, trimming limbs, removing limbs, burying roots, anything and everything that we've done to any part of our property that needs maintenance.

**{¶61}** "Q. Was there anything specific other than mowing, trimming, removing limbs, or burying roots in this particular disputed area of the property?

**{¶62}** "A. I don't believe so.  I think that sums up how we maintained all of our property.

**{¶63}** "Q. Did you ever place any fence along that disputed area?

**{¶64}** "A. No.

**{¶65}** "Q. Did you ever place any buildings upon that disputed area?

**{¶66}** "A. No.

**{¶67}** "Q. After the conversation with Mr. Bennett and you commenced mowing, removing limbs, burying roots, is that something you would have done if you had known Mr. Bennett was mistaken about the property line?

**{¶68}** "A. No." Deposition of Kevin McKenna at 24-25.

**{¶69}** Kevin McKenna further testified that he never did anything to close in the area, did not erect a fence in the area and did not erect any buildings. Moreover, as noted by appellees, appellants admitted that they never moved, planted anything or maintained the land beyond the tree line, which is part of the disputed area. Appellant Linda (Madden) McKenna, during her deposition testified that such area was allowed to "grow up." Deposition of appellant Linda (Madden) McKenna at 57.

**{¶70}** Based on the foregoing, we find that the trial court correctly held that appellant failed to prove, by clear and convincing evidence, that their use of the subject property was sufficiently adverse and that, therefore, the trial court did not err in granting appellees' Motion for Summary Judgment while denying that filed by appellants. We find that appellants' use of the disputed property, as a matter of law, was insufficient to establish adverse possession.

**{¶71}** Appellants' sole assignment of error is, therefore, overruled.

**{¶72}** Accordingly, the judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Edwards, J.

Gwin, P.J. and

Hoffman, J. concur

_____

_____

_____

JUDGES

JAE/d0817

[Cite as *McKenna v. Boyce*, 2012-Ohio-5163.]

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO

FIFTH APPELLATE DISTRICT

KEVIN H. McKENNA AND          :
LINDA S. (MADDEN) McKENNA     :
                         :
        Plaintiffs-Appellants     :
                         :
                         :
-vs-                            :         JUDGMENT ENTRY
                         :
JARROD D. BOYCE AND         :
MELISSA M. BOYCE, et al.,      :
                         :
        Defendants-Appellees    :         CASE NO. CT2012-0014

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Muskingum County Court of Common Pleas is affirmed. Costs assessed to appellants.

                            _____

                            _____

                            _____

                                      JUDGES