[Cite as *Wischt v. Heirs of Mourer*, 2017-Ohio-8236.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| JOHN WISCHT, ET AL | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Craig R. Baldwin, J. |
| Plaintiffs-Appellees | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 17 CA 8 |
| THE HEIRS OF PEARL RUTH | : |  |
| MOURER, ET AL | : |  |
|  | : | O P I N I O N |
| Defendants-Appellants |  |  |

CHARACTER OF PROCEEDING:     Civil appeal from the Guernsey County
                              Court of Common Pleas, Case No.
                              15CV000280

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       October 18, 2017

APPEARANCES:

For Plaintiffs-Appellees          For Defendants-Appellants

BRETT HILLYER                     CHARLES PLUMMER
201 N. Main Street                139 West Eighth Street
P.O. Box 272                      P.O. Box 640
Uhrichsville, OH 44683            Cambridge, OH 43725-0640

*Gwin, P.J.*

{¶1}   Appellants appeal the February 16, 2017 judgment entry of the Guernsey County Court of Common Pleas denying their motion for summary judgment and granting appellees' motion for summary judgment.

*Facts & Procedural History*

{¶2}   The parties in this matter are adjoining landowners of real estate on Boden Road in Guernsey County.  On July 15, 2015, appellees John and Lori Wischt filed a complaint for quiet title and action to enforce settlement against appellants, the Heirs of Ruth Pearl Mourer: Donald Mourer, Wanda Colvin, Wanita Oliver, Charles Mourer, William Mourer, Timothy Mourer, Marsha Wilson, and Wayne Mourer.  Appellees claimed that, either via quiet title or via an agreed settlement, they had a right-of-way through appellants' property.  Appellants filed an amended counterclaim against appellees for adverse possession, prescriptive easement, ejectment, and trespass.  Appellants claim they, through adverse possession, have title to an eleven acre portion of appellees' land.

{¶3}   The chain of title to appellees' property is as follows:  appellees acquired the property through a general warranty deed dated March 21, 2014, from James E. Kittle, the trustee of the Cora E. Kittle Revocable Trust dated Feb. 23, 1993 to John and Lori Wischt; the James and Cora E. Kittle Revocable Trust dated Feb. 23, 1993 acquired the property via a quit-claim deed dated Feb. 23, 1993 from James and Cora Kittle.  James and Cora Kittle acquired the property via a warranty deed dated April 4, 1951 from Samuel Gibson to James E. and Cora E. Kittle.

{¶4}   The chain of title to appellants' property is as follows:  on April 1, 1949, Arthur and Grace Mourer acquired the property via a deed from J.W. Angle and Grace

Angle; via a deed dated December 11, 1967, Charles and Ruth Pearl Mourer acquired the property from Arthur and Grace Mourer; on March 11, 2008, Charles and Ruth Pearl Mourer signed a survivorship deed, deeding the property to themselves; on March 16, 2008, Ruth Pearl Mourer executed a transfer on death deed, from herself to her son Donald Mourer, daughter Wanda Colvin, daughter Wanita Oliver, son Charles Mourer, son William Mourer, son Timothy Mourer, daughter Marsha Wilson, and son Wayne Mourer; and an affidavit dated June 29, 2015 by Donald Mourer provides that Ruth Pearl Mourer died on April 29, 2015 and thus her interest in the property is terminated by her death and her children are now the owners of the entire fee simple interest in the real estate.

{¶5}   The trial court issued a judgment entry on November 14, 2016.  The trial court: found appellees failed to provide any reliable evidence that an easement exists on appellants' property; dismissed appellees' claim to quiet title alleging an easement on appellants' property; and dismissed appellees' action to enforce settlement.  The trial court noted an issue remained as to the claimed adverse possession by appellants of an eleven acre tract of land and stated it would come on for further hearing.

{¶6}   On December 9, 2016, appellants filed a motion for summary judgment regarding the eleven acres.  In their motion, appellants agreed that according to the deposition of James Kittle ("Kittle"), who was the prior owner of appellees' property, Kittle agreed in the 1950's that the Mourers could use the eleven acres.  However, appellants argued since Kittle had not been on or used the property since the 1950's, no additional consent was given since the 1950's and what began as consensual use developed into an adverse use.  Attached to appellants' motion for summary judgment is the affidavit of

one of the appellants, Wanita Oliver.  Wanita Oliver avers that she has personal knowledge that, "her mother and father, Charles and Pearl, openly, continuously, exclusively, adversely, and notoriously used this property referred to as the "11 acres" since they purchased the property in 1967."  Further, that the Mourers have used the referenced acreage as pasture and cattle accessible property since at least 1967.

{¶7}   Appellees filed their own motion for summary judgment regarding the eleven acres and argued that, pursuant to the deposition of Kittle, appellants' parents used the land with permission.  Appellees also filed a response in opposition to appellants' motion for summary judgment, again citing the deposition of Kittle.

{¶8}   Kittle, now deceased, testified during his deposition that he sold the property at issue to appellees and he had been on the property three times since purchasing it as an investment property.  Kittle stated his parents were friends of Charles and Pearl Mourer.  Further, that Charles and Pearl knew both him and his parents.  Kittle had a good relationship with Charles and Pearl and he kept in contact with them through the years.  Kittle stated he and Charles and Pearl had a "very good relationship" with regards to the property.  Kittle never had any issues with the Mourers.

{¶9}   Kittle testified there was a fence dividing the property that had fallen down. He and his father did not want to rebuild the fence, so his father, representing him, told Charles and Pearl they could water their cows without building a fence.  Kittle stated, "so that gave the Mourers the right to water the cows from the spring that was on my property."  Kittle was unsure of the exact date his father, representing him, gave this permission to Charles and Pearl.  However, he believes it was after the 1950's, but before his father died in 1975.  Kittle stated he never revoked the right he gave to the Mourers,

through his father, to water their cows. When asked how Kittle permitted the Mourers to water their cows on his land, he testified that his father made the arrangements with Charles Mourer. Kittle confirmed he gave his approval of the permission his father gave to Charles.

{¶10} Kittle testified the property was timbered a couple of times. He had it timbered just prior to when he sold it in 2014, it had been previously timbered approximately ten or fifteen years ago, and at least once before his father died. Kittle stated he did not use the part of the property at issue. Kittle testified that he never saw any cattle or other animals on his land.

{¶11} The trial court issued a judgment entry on February 16, 2017 on appellants' and appellees' motions for summary judgment. The trial court found Kittle granted permission to use the real estate to the Mourer family to water their cattle and this permission was never revoked. Thus, the trial court granted appellees' motion for summary judgment and denied appellants' motion for summary judgment.

{¶12} Appellants appeal the February 16, 2017 judgment entry of the Guernsey County Court of Common Pleas and assign the following as error:

{¶13} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BY VIRTUE OF THE FACT THAT THERE IS A GENUINE ISSUE OF MATERIAL FACT WHETHER PERMISSION WAS GRANTED TO CHARLES AND PEARL MOURER WHEN THEY RECEIVED OWNERSHIP BY VIRTUE OF A WARRANTY DEED DATED DECEMBER 11, 1967 AND RECORDED IN GUERNSEY COUNTY RECORD VOLUME 276, PAGE 163 (SEE "EXHIBIT D" ATTACHED HERETO)."

*Summary Judgment Standard*

**{¶14}**  Civil Rule 56(C) provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  No evidence or stipulation may be considered except as stated in this rule.  A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor.  A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**{¶15}**  A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts.  *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981).  The court may not resolve any ambiguities in the evidence presented.  *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984).  A fact is material if it affects the outcome of the case under the

applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶16} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶17} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist. 1991).

I.

{¶18} Adverse possession focuses on the acts of the one claiming prescriptive ownership and requires proof of exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years. *Grace v. Koch*, 81 Ohio St.3d 577, 692 N.E.2d 1009 (1998). To prevail on a claim for adverse possession, a claimant must establish these factors by clear and convincing evidence. *Id.* A party who fails to prove any of the elements fails to acquire title through adverse possession. *Id.*

{¶19} A successful adverse possession action results in a legal titleholder forfeiting ownership to an adverse holder without compensation. *Id.* Such a doctrine should be disfavored, and that is why the elements of adverse possession are stringent. *Id.*

{¶20} Appellants contend the trial court erred in finding their use of the property was not adverse. Appellants make two specific arguments: first, that since there is no evidence permission was given by Kittle since 1975 after his father's death or since Charles and Pearl obtained title to the property in 1967, Kittle's previous permission is not sufficient to defeat a claim of adverse possession. Further, appellants argue the affidavit of Wanita Oliver is sufficient to create a genuine issue of material fact as to whether permission was granted to Charles and Pearl to use the land.

{¶21} Adverse use is described as non-permissive use. *McCune v. Brandon*, 85 Ohio App.3d 697, 621 N.E.2d 434 (5th Dist. 1993). Possession is not adverse if it is done with the owner's permission. *Pavey v. Vance*, 56 Ohio St. 162, 46 N.E. 898 (1897).

{¶22} Appellants encourage this Court to adopt the reasoning of the Seventh District Court of Appeals in *Eckman v. Ramunno*, 7th Dist. Mahoning No. 09 MA 162, 2010-Ohio-4316. The Seventh District stated:

Although it is true that permission cannot ripen into adversity by mere lapse

of time, this concept applies only to those persons to whom the permission

was given. Where, for instance, the invited occupier leaves and a wholly

new occupier begins possession, the original permissive use is not

automatically extended. Rather, the landowner must renew his permission

to subsequent occupiers in order to avoid adverse possession and to

maintain the express permission. In other words, although prior permissive use of a predecessor is relevant to erase the adversity element for periods within the relevant twenty-one year period, it does not make a current occupier's use permissive.

**{¶23}** We first note that this Court has not adopted the holding of the Seventh District and has stated in previous cases that, "when the original entry onto another's property is permissive or conferred by grant, then any use reasonably consistent with such a grant or permission is not adverse." *Rodgers v. Pahoundis*, 178 Ohio App.3d 229, 2008-Ohio-4468, 897 N.E.2d 680 (5th Dist.); *Heggy v. Lake Cable Recreation Assn.*, 1977 WL 201024; *Cox v. Kimble*, 5th Dist. Guernsey No. 13 CA 32, 2015-Ohio-2470.

**{¶24}** However, even if we were to review this case under the analysis of *Eckman*, we find summary judgment was appropriate. Unlike in *Eckman*, where the occupiers were different, unrelated individuals throughout the twenty-one years, the occupiers of the property since 1949 are family members. See *Harris v. Dayton Power & Light Co.*, 2nd Dist. Montgomery No. 26796, 2016-Ohio-517 (holding "when calculating years of continuous adverse use, continuity is not broken by a change in ownership between family members").

**{¶25}** Further, while the property was owned by Arthur and Grace Mourer until 1967 and Kittle was unclear what year he gave his permission, in his deposition, Kittle unequivocally states the permission was given, through his father, "to Charles." The neighborly relationship Kittle describes in his deposition is between himself, his parents, Charles, and Pearl. Kittle never mentions permission with regards to Arthur and/or Grace

and does not testify to any relationship his family had with Arthur and/or Grace. Arthur and/or Grace are not mentioned at all in Kittle's deposition.

{¶26} Pursuant to *Eckman*, the relevant inquiry is the permission as it relates to the occupier of the property, not the owner of the property. Appellants have provided no evidence disputing Kittle's testimony or providing evidence that permission was given to Arthur and/or Grace rather than Charles. Thus, Charles was the person, "to whom the permission was given" and this permission given to Charles cannot ripen into adversity by the mere lapse of time. The first date Charles was not the occupier of the property was after his death in 2008. A period of twenty-one years has not elapsed since that date and thus appellants cannot demonstrate adverse use for a period of twenty-one years. Accordingly, summary judgment is appropriate in favor of appellees.

{¶27} Appellants next contend the affidavit of Wanita Oliver, an appellant in this case, is sufficient to create a genuine issue of material fact as to permission. Wanita Oliver's affidavit provides, "her mother and father, Charles and Pearl, openly, continuously, exclusively, adversely, and notoriously used this property referred to as the "11 acres" since they purchased the property in 1967." We first note that appellants did not file a response to appellees' motion for summary judgment. Rather, Oliver's affidavit was attached to appellants' own motion for summary judgment.

{¶28} However, even if we consider this in response to appellees' motion for summary judgment, as we stated in *Patterson v. Licking Township*, 5th Dist. Licking No. 17-CA-3, 2017-Ohio-1463, "a self-serving affidavit that is not corroborated by any evidence is insufficient to establish the existence of an issue of material fact." Further, "to conclude otherwise would enable the nonmoving party to avoid summary judgment in

every case, crippling the use of Civ.R. 56 as a means to facilitate the early assessment of the merits of the claims, pre-trial dismissal of meritless claims, and defining and narrowing issues for trial." *Id.,* citing *Bank of New York v. Bobo*, 4th Dist. Athens No. 14CA22, 2015-Ohio-4601; see also *State of Ohio v. $317.49 in U.S. Currency & Ruger 9MM Handgun*, 5th Dist. Stark No. 2006-CA-00318, 2007-Ohio-475. If such affidavits were permitted, a party could avoid summary judgment under all circumstances solely by submitting a self-serving affidavit containing nothing more than bare contradictions of the evidence offered by the moving party. *TJX Companies, Inc. v. Hall*, 183 Ohio App.3d 236, 2009-Ohio-3372, 916 N.E.2d 862 (8th Dist.).

**{¶29}** As in *Patterson*, in this case, appellant has not corroborated her affidavit with any evidence or included in her affidavit any specific facts which establishes the existence of an issue of material fact. Rather, her affidavit contains bare contradictions of the evidence offered by appellees through Kittle's deposition. Accordingly, the trial court did not err in granting summary judgment to appellees.

**{¶30}** Finally though appellants contend the open, notorious, and continuous elements of adverse possession are not in dispute, appellees disagree.

**{¶31}** In order for possession to be considered open, the "use of the disputed property must be without attempted concealment." To be notorious, a use must be known to some who might reasonably be expected to communicate their knowledge to the owner or is so patent that the true owner of the property could not be deceived as to the property's use. *McKenna v. Boyce*, 5th Dist. Muskingum No. CT 2012-0014, 2012-Ohio-5163. The occupancy must give notice to the real owner of the extent of the adverse claim. *Franklin v. Massillon Homes, II,* LLC, 184 Ohio App.3d 455, 2009-Ohio-5487, 921

N.E.2d 314 (5th Dist. Stark). The Ohio Supreme Court quoted the Vermont Supreme Court in stating, "the tenant must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest." *Grace v. Koch*, 81 Ohio St.3d 577, 692 N.E.2d 1009 (1998), quoting *Darling v. Ennis*, 138 Vt. 311, 415 A.2d 228 (1980).

{¶32} This Court has previously considered the open, notorious, exclusive and continuous elements of adverse possession in several cases. *McKenna v. Boyce*, 5th Dist. Muskingum No. CT 2012-0014, 2012-Ohio-5163 (affirming finding of summary judgment against adverse possession because mowing, trimming, removing limbs, and burying roots is not clear and convincing evidence of adverse possession); *Murphy v. Cromwell*, 5th Dist. Muskingum No. CT2004-0003, 2004-Ohio-6279 (finding no clear and convincing evidence of adverse possession when the appellants had cleaned up branches, mowed the property, raked the property, fertilized the property, and walked the dog across the property); *Arnholt v. Carlisle,* 5th Dist. Licking No. 10CA91, 2011-Ohio-2948 (finding adverse possession not against the manifest weight of the evidence when appellants planted 100 trees and took care of them since that went beyond "mere maintenance" and minor landscaping); *Franklin v. Massillon Homes, II, LLC*, 184 Ohio App.3d 455, 2009-Ohio-5487, 921 N.E.2d 314 (5th Dist.) (finding a genuine issue of fact when there was evidence appellants removed a tree on the property, planted a tree on the property, took care of the lawn, hired third parties to maintain the property at issue, parked cars there, and told trespassers to leave the area); *Robinson v. Armstrong*, 5th Dist. Guernsey No. 03 CA 12, 2004-Ohio-1463 (holding the use of the property was not exclusive because others used the property to access other fields). We have held that

"mere maintenance of land, such as mowing grass, cutting weeds, planting a few seedlings, and minor landscaping, is generally not sufficient to constitute adverse possession." *McKenna v. Boyce*, 5th Dist. Muskingum No. CT 2012-0014, 2012-Ohio-5163; see also *Grace v. Koch*, (finding mowing grass, parking cars, using the land for recreation, placing a swing set, firewood, and oil drums on the property to be a close case as to adverse possession).

{¶33} In this case, the only evidence presented is Wanita Oliver's assertion in her affidavit that Charles and Pearl Mourer used the referenced acreage as pasture and cattle accessible property since at least 1967.

{¶34} In a case factually analogous to this case, in which the property at issue was used for pasture, we noted that "there are a surprising number of Ohio cases dealing with adverse possession of pasture land." *Galbraith v. J.J. Detweiler Enterprises, Inc.*, 164 Ohio App.3d 332, 2005-Ohio-6300, 842 N.E.2d 124 (5th Dist.). We found the cases dealing with adverse possession of pasture land, "stand for the proposition that claimant's use of the property must be exclusive and adverse to the title owner, and pasturing does not necessarily exclude the title owner from using the property in other ways and for other purposes" and held the finding of adverse possession was against the manifest weight of the evidence when the land was used for pasture and appellees did not improve the property. *Id,* citing *Sams v. Nolan*, 4th Dist. Ross No. 1326, 1987 WL 13947 (July 1, 1987) (finding possession not sufficiently adverse and exclusive even though the claimant fenced the property to keep goats in the pasture and children out); *Bierhup v. Leaco, Inc.*, 4th Dist. Jackson No. 94 CA 742, 1995 WL 389292 (June 28, 1995) (finding repairing a

fence on disputed land, using the land as pasture, and removing timber was insufficient to establish adverse possession).

{¶35} Accordingly, we find, based upon our decision in *Galbraith*, the use of the land for pasture and cattle accessible property is insufficient to establish the elements of adverse possession when there is no evidence appellants' improved the property or prevented the title owner from using the property in other ways or for other purposes such as timbering. Thus, we find the grant of summary judgment was also appropriate for this reason.

{¶36} Based on the foregoing, we find the trial court did not err in granting summary judgment to appellees. Appellants' assignment of error is overruled. The February 16, 2017 judgment entry of the Guernsey County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Baldwin, J., and

Wise, Earle, J., concur