BENNINGHOFF ET AL., D. B. A. BENNINGHOFF & REDFOOT, APPELLEES, *v.* SKINNER, APPELLANT.

(Decided December 30, 1938.)

*Mr. R. J. Nicholson,* for appellees.
*Mr. Herman N. George* and *Mr. Ralph R. Miller,* for appellant.

NICHOLS, P. J.   This cause is in this court upon appeal by defendant on questions of law and fact from the judgment of the Common Pleas Court of Mahoning county and has been submitted upon the transcript of the evidence taken in the Common Pleas Court, the oral arguments and briefs of counsel.

The petition of plaintiffs contains three separate causes of action for injunctive relief against defendant.

For their first cause of action plaintiffs seek to enjoin defendant from obstructing the use of a fifty-foot strip of land extending along the westerly frontage of real estate owned by the plaintiffs and the defendant, over which plaintiffs claim a right of way appurtenant to their respective lands, established by former owners of the lands, which strip has been open and in use by plaintiffs and their predecessors in title since the creation of the same prior to 1910. Plaintiffs claim that

they purchased their respective premises relying upon the right to use and enjoy such easement or right of way and that they have no means of ingress or egress to or from their property except over the strip in question.

For their second cause of action plaintiffs claim that the former common owner of all the premises established a right of way over the strip of land in question more than twenty-one years before the defendant obstructed the same; and that the same was established for the purpose of affording ingress and egress to the property and premises now owned and occupied by plaintiffs and has ever since the year 1910 been open and used by them and the former owner of the premises until the defendant erected a large building at the south end of the strip and thereby obstructed the use of the right of way thereover.

For their third cause of action plaintiffs claim that the strip of land is a duly dedicated and established public highway along the westerly boundary of the respective premises owned by plaintiffs and the defendant.

The defendant admits that he has constructed a building which is partially located on the westerly fifty feet of his land, but denies that there was ever established by any of his predecessors in title or any of plaintiffs' predecessors in title a right of way over and along the westerly fifty feet of his land; and further denies that there ever existed or now exists an easement or right of way for street or highway purposes over his property; denies that the fifty feet have been opened and in use as a street or highway by plaintiffs or their predecessors in title, or that the same have been established and used for more than twenty-one years; denies that the county commissioners of Mahoning county duly established and dedicated a public highway over the fifty-foot strip of land; and generally denies that plaintiffs have any right, easement, right

of way, or any interest whatever in and to the westerly fifty feet of defendant's property.

From the evidence it appears that Oswald Detchon, in the year 1904, acquired title to a tract of land situated in Boardman township, Mahoning county, containing about twenty acres, bounded on the south by the public road known as the Boardman-Poland highway, and on the wést by the right of way of The Youngstown & Suburban Railway Company.

Oswald Detchon died seized of this tract of land November 9, 1910, but during his lifetime had evidently made some arrangement or agreement with a son, Aubrey Detchon, whereby this son was to have a lot containing about one-half acre in the extreme northwest corner of the twenty-acre tract. The son, Aubrey, about the year 1908, erected upon or moved a house onto this one-half acre tract, in which he lived while he practiced his profession of veterinary doctor. There was no public road bounding or adjacent to this one-half acre tract, and it appears from the evidence that at or about the time Aubrey Detchon took possession thereof and placed his house thereon Oswald Detchon conceived the idea that a public highway, afterward referred to as the extension of Southern boulevard, should be located and established along the entire western boundary of the twenty-acre tract. Pending the establishment of such public street or highway he designated the strip of ground forty feet in width, running from his northern boundary line to the Boardman-Poland highway on the south, bounded on the west by the eastern boundary line of the railroad right of way. From that time on, by mutual acquiescence and as a matter of reasonable necessity and convenience, this forty-foot strip was used by Aubrey Detchon and his successors in title as the means of access to and from the one-half acre tract and the Boardman-Poland highway. Apparently the agreement between Aubrey Detchon and his father, Oswald

Detchon, which led Aubrey to place his house on the one-half acre tract was to the effect that the father would devise this one-half acre to his son, Aubrey, since the father retained title to the entire twenty-acre tract, including the one-half acre upon which Aubrey had placed his house. The father died leaving a will which was executed September 13, 1910, and duly probated December 22, 1910, by which he devised all of his real estate to his wife, Sarah S. Detchon, during her life, and further provided as follows:

"At the death of my wife, Sarah S. Detchon, I give, devise and bequeath all my real estate except my interest in the Musser lot to my five children, James B. Detchon, Paul C. Detchon, Aubrey B. Detchon, Mary J. Meek, and Byrd Black, share and share alike provided, however, that the lot my son Aubrey B. Detchon has built upon, being a lot one hundred (100) feet front by one hundred fifty (150) feet, fronting on the east line of an intended street forty (40) feet wide on the east side of The Youngstown & Suburban Railway, shall be the property of said Aubrey Detchon but shall be taken out of his equal share heretofore provided."

In October, 1912, a quitclaim deed conveying the one-half acre tract was made to Aubrey Detchon by all the other devisees under the will of Oswald Detchon, except the widow. In this deed it is provided that by accepting the same the grantee agrees to dedicate for public highway purposes a strip of land adjoining The Youngstown & Suburban Railway Company right of way line and extending forty feet in width across the entire width of the premises conveyed, whenever the owner or owners of lands adjoining dedicate a like strip forty feet in width along such right of way and extending to the Boardman-Poland public highway.

Aubrey Detchon, by quitclaim deed dated May 21, 1919, conveyed the one-half acre tract to his brother James B. Detchon, the deed containing in substance

the same provision requiring the grantee to dedicate the forty-foot strip for public highway purposes.

By warranty deed dated June 7, 1919, Sarah S. Detchon and other devisees of Oswald Detchon, deceased, conveyed to James B. Detchon the one-half acre tract aforesaid, now known as the Duke property, this deed containing a similar provision requiring the grantee to dedicate a forty-foot strip for public highway purposes, the deed further reciting that the purpose of its execution is to correct the quitclaim deed formerly executed to Aubrey Detchon.

On January 20, 1928, James B. Detchon and wife conveyed the one-half acre tract to plaintiffs, Thomas J. Duke and Mary C. Duke, in completion of a land contract theretofore entered into by the parties February 13, 1924. It is provided in this deed that the grantees by accepting the same agree to dedicate for a public highway a strip of land adjoining the right of way of The Youngstown & Suburban Railway Company, *forty-five* feet wide across the entire width of the premises conveyed, whenever the owners of the adjoining lands dedicate a like strip forty-five feet in width as a right of way to the proposed Southern boulevard.

Upon petition filed September 10, 1917, the commissioners of Mahoning county took certain action for the establishment of Southern boulevard as a public road over the strip of land in question, but the road was never ordered opened by the commissioners, and the strip was not in fact dedicated by the owners for public highway purposes.

The title to the whole of the twenty-acre tract of land (except the one-half acre now known as the Duke property) remained in the widow and devisees of Oswald Detchon until October 30, 1923. From this fact it is claimed by defendant that no right of way or easement over the forty-foot strip in question here could have been established by prescription over the

Detchon's own lands, notwithstanding the fact that the strip forty feet in width had theretofore openly and continuously been used for ingress and egress from the Boardman-Poland highway to the Detchon land, as well as to the one-half acre tract. The majority of this court thinks it unnecessary to determine whether, under the circumstances, Aubrey Detchon and his successors in title have acquired a right of way by prescription over this strip of land. As to this one-half acre tract, we think it clear from the evidence that as an appurtenance thereto a way or easement over the forty-foot strip to the Boardman-Poland highway passed to Aubrey Detchon at the date of the original conveyance to him, and thence to the present owner of the one-half acre tract, to wit, Thomas J. Duke and Mary C. Duke, plaintiffs herein. This way being open and notorious and the use thereof being plainly visible at the time the Detchon heirs conveyed the remainder of the original Detchon farm to W. Edgar Leedy on October 30, 1923, it follows that as to W. Edgar Leedy and his subsequent grantees, including the plaintiffs, Benninghoff and Redfoot, and the defendant, Skinner, their respective deeds are subject to the way or easement appurtenant to the land now owned by the Dukes and described in the petition. Although the Detchon heirs could not establish a way or easement by prescription over their own lands, we do find from the evidence that while Oswald Detchon and his heirs were the owners of this land they did establish a way of reasonable necessity and convenience as distinguished from a way of strict necessity over this forty-foot strip for ingress and egress from their lands to the Boardman-Poland highway; that this way or easement was continuously used by them for a number of years previous to the conveyance to W. Edgar Leedy; that the boundaries thereof were definitely established as the right of way line of the railway company on the west and a line of poles with wires thereon conveying elec-

tric current from the Boardman-Poland road to the home of Aubrey Detchon, which electric line was located forty feet east of the railway right of way line; that at that time and ever since it has been plainly obvious and visible that the forty-foot strip was being used as a way of reasonable necessity and convenience from the original Detchon lands to this public highway; that the conveyance by the widow and other Detchon heirs to James B. Detchon and from the latter to W. Edgar Leedy, as well as all subsequent conveyances of this land, having contained language to the effect that the land "together with all appurtenances thereunto belonging" were being conveyed, we conclude that the plaintiffs, as well as the defendant, Skinner, took their respective lands subject to this right of way or easement over the forty-foot strip in question; and that none of the parties to this action has or had the right to so obstruct the forty-foot strip as to prevent the reasonable use thereof as a means of ingress and egress to the respective lands from the Boardman-Poland highway. That the use of this forty-foot strip as a right of way or easement was plainly visible and obvious is shown by the evidence to the effect that the commissioners of Mahoning county, prior to the time the defendant, Skinner, acquired his property, had constructed a tile drain along the Boardman-Poland highway the entire width of the forty-foot strip so that access to this strip from the public highway could safely and conveniently be had. The evidence is further to the effect that some improvement had been made upon this forty-foot strip and although such improvement was not extensive, the tracks made by vehicles traveling over the strip were plainly visible at the time James B. Detchon conveyed to Leedy and at all times subsequent thereto.

It further appears that all conveyances of any part of the original twenty-acre Detchon tract made some reference to the forty-foot strip of ground and re-

quired each grantee by accepting his deed to dedicate a strip along the railroad right of way for public highway purposes when the adjacent owners conveyed a like strip for such purpose. In some of the deeds this strip was designated as forty feet in width; in some forty-five feet; and in some fifty feet. It is apparent that if a public road or street should be established by proper public authority, plaintiffs and the defendant are required to dedicate for public highway purposes a strip of land at least forty feet in width in accordance with the provision in their respective deeds; but until such public highway is established, it is the finding and decree of this court that the plaintiffs have a right of way or easement appurtenant to their respective lands over the forty-foot strip for ingress and egress to their respective properties; and that neither the plaintiffs nor the defendant, nor their successors in title, have any right to obstruct the free use of this strip for the purposes mentioned.

For our authority we cite the following: *National Exchange Bank* v. *Cunningham,* 46 Ohio St., 575, 587, 22 N. E., 924; *Baker* v. *Rice,* 56 Ohio St., 463, 47 N. E., 653; *Frate* v. *Rimenik,* 115 Ohio St., 11, 152 N. E., 14; *Ciski* v. *Wentworth,* 122 Ohio St., 487, 172 N. E., 276; 15 Ohio Jurisprudence, 46, 49, Section 34; 17 American Jurisprudence, page 944, Sections 32, 33, 34, 41, 128, 130, 131, under the title "Easements."

As particularly applicable to the facts shown by the evidence in this case we quote the second paragraph of the syllabus of the case of *Frate* v. *Rimenik, supra:*

"2. Easements and servitudes created by a common owner of lands, which are plainly visible and from the character of which it may be fairly presumed that he intended their preservation as necessary to the proper, convenient, and reasonable enjoyment of the property, become, when the lands are divided and pass into other hands, permanent appurtenances thereto, and neither the owner of the dominant or of the servient portions

of the land has power to adversely interfere with their proper use and enjoyment.''

From the more recent case of *Ciski* v. *Wentworth, supra,* we quote the syllabus:

''While implied grants of easements are not favored, being in derogation of the rule that written instruments shall speak for themselves, the same may arise when the following elements appear: (1) a severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only.''

From the evidence in the case we now have to determine we find that all of the conditions set forth in the syllabus above quoted from *Ciski* v. *Wentworth* have been established on behalf of plaintiffs.

On the hearing of this cause in the Common Pleas Court, it was the judgment of that court that plaintiffs were entitled to the injunctive relief prayed for, that judgment, however, being determined upon a different basis than that which we conclude is the proper rule to apply to the evidence contained in the record. The Common Pleas Court found, however, that it would not be proper and equitable under the circumstances to require the defendant to remove the building which he has erected upon the right of way in question since this building did not entirely obstruct the right of way and sufficient of the right of way remained unobstructed to afford reasonable means of ingress and egress to the lands of plaintiffs. No appeal was taken by plaintiffs from that decree, and we conclude that plaintiffs are satisfied therewith and that we should conform the decree in this court thereto.

It is, therefore, ordered, adjudged and decreed by this court that the defendant, William Skinner, his successors in title, together with his agents, heirs, administrators and assigns, be and they are hereby permanently and perpetually enjoined from further, in any manner, obstructing or encumbering the forty-foot strip, or from altering that portion of the building which now stands on this forty-foot strip except to make ordinary repairs thereto or to remove the same, and from interfering in any manner with the right of ingress and egress of plaintiffs and their successors in title over such right of way as aforesaid.

*Decree accordingly.*

CARTER, J., concurs in the decree in favor of all plaintiffs.

BENNETT, J., concurs in the decree in favor of Thomas J. Duke and Mary C. Duke, and dissents from the decree in favor of D. W. Benninghoff and Lester Redfoot, doing business as Benninghoff & Redfoot, a partnership.