BLANCHET, APPELLEE, *v.* THE OTTAWA HILLS CO., APPELLANT.

(Decided February 13, 1939.)

*Messrs. Flory & Taylor,* for appellee.
*Messrs. Ritter & Daugherty,* for appellant.

CARPENTER, J. This was an action for damages to real property claimed to have resulted from the stoppage by the defendant of a private sanitary sewer leading from plaintiff's premises. It is claimed that this act by the defendant was a breach of a covenant of warranty in the deed given by defendant to plaintiff's immediate predecessor in title, which passed to plaintiff with her title.

In the lower court, trial by jury was waived and the court found and entered judgment for the plaintiff for

$2,225. From this judgment, the defendant appealed on questions of law.

The essential facts are not seriously disputed. Some time prior to 1905 when the property in question was farm land, and no sewer connections were available to it, the owner equipped the dwelling house on it with a bathroom and toilets, and drainage for them and a greenhouse was provided by constructing a septic tank 75 feet from the house with a hard tile drain to it, and a field tile overflow drain from the septic tank for 800 to 1,000 feet to a ravine where it emptied on the surface. In 1913 the defendant, The Ottawa Hills Company, under another name, acquired title to all of the land on which this house and sewer and its outlet were situated. It also owned other lands in the vicinity, all of which were later developed and platted into town lots. Of these, lot 16 in block E is plaintiff's property, which was 250 feet square. Certain restrictions were imposed upon all of those lots. Some time prior to 1926 this lot was sold on a land contract to Daniel McKercher, and August 24, 1926, it "together with the privileges and appurtenances to the same belonging" but subject to the allotment restrictions, was by warranty deed conveyed by defendant to McKercher, who, by a general warranty deed dated July 23, 1927, conveyed it to this plaintiff.

For some time before and after 1920, The E. H. Close Company, a corporation engaged in general real estate business in Toledo and vicinity, was employed by defendant to manage all of this property, and that year the house now owned by plaintiff was reconditioned and remodeled and the secretary of the Close company, who had immediate charge of the management of this property, lived in it for a year. At that time there were two complete bathrooms on the second floor and a toilet in the basement. During his occupancy of the house the sewer from the house to the septic tank became stopped up and had to be repaired, and at that

time that employee of the Close company, in making those repairs, explored the sewer system, examined the septic tank and inquired of and was informed by the former owner of the property, who had installed the sewer, where the drain from and the outlet of the tank were located. The defendant paid the expense of making those repairs to the sewer.

In June, 1936, the defendant, by warranty deed without exception or reservation as to plaintiff's sewer across it, conveyed to a Mr. Zarobsky a lot on the line of the overflow drain, but several hundred feet from plaintiff's lot. The purchaser began the erection of a dwelling house on his lot by excavating for the basement and in so doing broke that drain and, as he said, it discharged "black and foul smelling" water into his excavation. He complained to defendant and it, after notice to plaintiff, caused her drain to be blocked and destroyed from a point about 80 feet from her property. In time this caused her basement to fill up with foul water and she and her family had to vacate the house. Later she installed an automatic electric pump, which kept her basement empty, but she could not use the sanitary facilities of her house until some months later when at a cost of $1,116 she had a new sewer constructed from her house to a new public street sewer which had just been constructed. In fact, she had to wait several months for it to be completed and available to her.

If the defendant was liable to the plaintiff for the damages thus caused her, it is not claimed that the amount awarded by the trial court, $2,225, is excessive. The sole dispute is as to whether there was liability for that damage.

The first and basic question in this controversy is whether, when defendant conveyed the lot in question to McKercher and retained title to the other land over which the outlet drain of the McKercher lot's private sewer system ran, an implied easement to a

continued use of that outlet drain over the retained lands passed to the McKercher lot as "an appurtenance to the same belonging."

In paragraph one of the syllabus of *Ciski* v. *Wentworth,* 122 Ohio St., 487, 172 N. E., 276, the necessary elements to create an implied easement are stated as follows:

"(1) A severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only."

Unquestionably the 1st, 3rd and 4th of these elements are present in this case, and the separate elements in item two, that the use of the sewer has been long continued (since before 1905) and was permanent, are likewise undisputed, but defendant urges that such use was not obvious and manifest and that it had no notice or knowledge of the fact that that drain existed on its retained land and hence it could not be implied that the parties intended there should be an easement in its continued use by the owners of Lot 16.

In many, if not all of the cases, cited to the court by the defendant the person sought to be charged was an innocent purchaser of the servient property without notice of the existence of a covered drain through his property. If the party who bought the lower lot and first broke into the sewer was the defendant herein, as to him these cases might have application, and a different question would be present, the answer to which is not required herein.

In this case the original grantor, who warranted the title with its appurtenances, not only sold that lower

lot without protecting the plaintiff's drain, but also itself actually blocked the drain and destroyed it.

From the undisputed facts, the defendant cannot be permitted to say it did not know of the presence of that drain and outlet on its retained land when it conveyed to McKercher. When it bought the property in 1913, it knew that the house, which then stood in quite open country farm land, had in it a bathroom and toilets; it knew such sanitary equipment required a drainage and disposal system of some kind; it knew there was no public sanitary sewer in the vicinity; from the experience of its agent, The E. H. Close Company, it had positive and exact knowledge of the septic tank system which was then repaired at its expense, and, as a proper and natural incident to making those repairs, its agent in the scope of its authority learned from information furnished to it by the person who laid the outlet drain as much about where it was as could be learned short of digging it up to make it visible. All of this experience, including continuous ownership of the property to 1926, certainly made the fact that there was such a drain on its land "obvious and manifest" in 1926 when it deeded the plaintiff's lot to McKercher. Both parties to that deed intended the grantee to have not only the bathroom and toilet equipment in the house but the necessary facilities to make them usable. This was "obvious and manifest," and any other conclusion would be absurd, even in the absence of the experience defendant's managing agent had in repairing the sewer.

Some courts have said such implied easement must be "apparent" to give rise to an implied intent on the part of the parties to include it in a conveyance of land. That this sewer system and its outlet were "apparent" to the defendant is apparent from the facts herein, even though it may not all have been visible. In *Wiesel* v. *Smira,* 49 R. I., 246, 142 A., 148, 58 A. L. R., 818, and the annotation thereto, will be found a

discussion of the distinction between the terms "apparent" and "visible" in relation to covered drains. Citing this authority 17 American Jurisprudence, 985, Section 79, under the title "Easements," says:

"Where it appears that property is sold fully equipped with visible plumbing and appliances to carry off waste and water, it has been held that there can be no serious dispute that the use of the drainpipe is reasonably necessary for the convenient and comfortable enjoyment of the property and passes upon conveyance of the property without specific mention."

And on the same page, in Section 80, of the same volume it is said that "where the appliances connected with, and leading to, it are obvious" the drain from them, although hidden underground is "apparent."

*Hamel v. Griffith,* 49 Howard's Prac. Rep., 305, was a case similar to the one at bar. The court there said:

"Apparent servitudes are defined to be not only such as are visible or must necessarily be seen, but such as may be seen or known on a careful inspection by a person ordinarily conversant with the subject * * *"

The answer to the basic question must be that an implied or *quasi*-easement in the outlet drain did result when defendant conveyed the lot to McKercher, and any rights he acquired therein impliedly passed by his deed to plaintiff. *Morgan v. Mason,* 20 Ohio, 401, 55 Am. Dec., 464; *Shields v. Titus,* 46 Ohio St., 528, 540, 22 N. E., 717.

The plaintiff's drain was first stopped by the purchaser of the lower lot—why should the defendant be liable for the damages the plaintiff sustained? By its covenant of warranty in its deed to McKercher, it was obligated to protect that easement. By its conveyance of the lower lot without a reservation as to plaintiff's drain, it knowingly invited the purchaser, Zarobsky, to destroy the drain. To protect itself from liability to that lot owner on its warranty to him, it

actively entered the scene and literally destroyed the drain.

Defendant now says that if plaintiff had an easement her sole remedy was to go upon the line of her drain and repair it where it was damaged, which she could have done "by circling the Zarobsky lot or by leeching." Either one of these processes would have meant, not the repair of her outlet, but the construction of a new one. Especially is that true after the complete destruction of the drain by the defendant itself. To have made the suggested repairs, it would have been necessary for plaintiff to go upon defendant's property, and in view of its obvious and manifest attitude by its destruction of the drain, such an effort would have been resisted, unless enjoined, and plaintiff has elected to seek her damages.

The fourth and last point of the defense is that when the sewer was broken by the excavation on the lower lot, a nuisance resulted in violation by the plaintiff of one of the restrictions which applied to her property. The opening of almost any sewer will cause a nuisance. There is no claim made and no evidence that there was any nuisance until the drain was broken. Who was it that caused the nuisance, the plaintiff, or the defendant by selling the lower lot without protecting its warranty to plaintiff to protect her sewer, thereby setting in motion the forces that it knew would lead to the breaking of the sewer and the nuisance that followed?

The judgment is affirmed.

*Judgment affirmed.*

OVERMYER and LLOYD, JJ., concur.