[Cite as *Szuber C., Ltd. v. Petrash*, 2022-Ohio-2694.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| SZUBER C, LTD., | : | JUDGES: |
| | : | Hon. Earle E. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| SALVATORE PETRASH, et al., | : | Case No. 21CA0000027 |
| | : | |
| Defendants - Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Guernsey County
Court of Common Pleas, Case No.
19CV000689

JUDGMENT:        Affirmed

DATE OF JUDGMENT:        August 3, 2022

APPEARANCES:

For Plaintiff-Appellee

CODY SMITH
SEAN JACOBS
Emens Wolper Jacobs &
Jasin Law Firm Co., LPA
One Easton Oval, Suite 550
Columbus, Ohio 43219

And

TODD M KILDOW
Emens Wolper Jacobs &
Jasin Law Firm Co., LPA
250 W. Main Street, Suite A
St. Clairsville, Ohio 43950

For Defendants-Appellants

DOUGLAS K. PAUL
NICHOLAS R. BROWN
Reitz, Paul & Shorr
215 West Garfield Road, Suite 230

*Baldwin, J.*

**{¶1}** Appellants, Salvatore Petrash, Sandra Petrash, Louis Neptune, William Neptune, and Lillian Neptune[1], appeal the decision of the Guernsey County Court of Common Pleas granting summary judgment and finding that Appellee, Szuber C LTD, established an easement across their property and that Appellee was entitled to injunctive relief preventing Appellants from obstructing that easement.

### STATEMENT OF THE CASE AND THE FACTS

**{¶2}** The history of the ownership of the Petrash/Neptune begins, in the record, with ownership by the George S. Wallo, Jr. and Mary Z. Wallo in 1952. (Kapolka Affidavit, ¶ 3). For reasons not disclosed in the record, the property was sold to Lewis and Sophia Kapolka at a sheriff's sale in 1953. (Plaintiff's Motion for Summary Judgment, Exhibit D, Kapolka Affidavit, ¶ 5). The access road that is alleged to be an easement allowing access to the Szuber C property across the Petrash/Neptune property was present when the Kapolka's purchased the property and had been used for access to the Szuber C property prior to Kapolka's purchase. The road was neglected and did not appear to have been graveled. (Kapolka Affidavit, ¶ 6).

**{¶3}** When the Kapolkas purchased the Petrash/Neptune property, the Szuber C property was owned by Steve Modock, who resided in a home on the property and whose only means of access to the property was across the alleged easement. Mr. Modock spread gravel on the alleged easement in 1954 to improve the access to his

---

[1] The captions and the pleadings make inconsistent references to a second Lillian Neptune and it is not clear that the reference is accurate or a scrivener's error. We have included a reference to only one Lillian Neptune, but this opinion and judgment shall apply to the second Lillian Neptune, if that person exists.

home on the Szuber C parcel.  The owners of the Petrash/Neptune parcel helped him spread the gravel. (Kapolka Affidavit, ¶ 9)

**{¶4}**   Henry Szuber purchased the Szuber C parcel in the 1960s and became a close friend of Lewis Kapolka, one of the owners of the Petrash/Neptune parcel and his son, Louis Kapolka.  Szuber and the Kapolkas assisted each other with projects as they were able and the Kapolkas told Szuber that he was permitted to use the easement.  That permission was intended to be perpetual and was granted by the Kapolkas in recognition of the fact that the Szuber C property was inaccessible except via the alleged easement. (Kapolka Affidavit, ¶¶ 10-11).

**{¶5}**   In 1974 Robert Sherby helped Henry Szuber harvest corn planted on the Szuber C property by Henry Szuber, and, from approximately 1975 to 1977, Sherby helped Szuber bale hay grown on the same parcel.  During that time, Sherby and Szuber accessed the property by using the alleged easement.   Sherby was also aware of Szuber's use of the property when he was not assisting him.  He recalls Szuber moving the round bales of hay off the property one by one, transporting them to a nearby farm and comprising "hundreds" of trips each year.  He recalled that the easement was well traveled and improved with "railroad cinders." (Plaintiff's Motion for Summary Judgment, Exhibit I, Sherby Affidavit, ¶¶ 3-8).

**{¶6}**   Wayne Shriver began helping Henry Szuber bale hay on the Szuber C parcel in the 1980's.  They used the alleged easement to gain access to the property. (Plaintiff's Motion for Summary Judgment, Exhibit O, Shriver Affidavit, ¶ 4). When the Petrash/Neptune Property was owned by Louis Kapolka, and Henry Szuber owned the Szuber C parcel, a gate was installed on the Petrash/Neptune Property at the edge of

the access road where it meets State Route 313. (Shriver Affidavit, ¶ 6). Louis Kapolka, owner of the Petrash/Neptune property when the gate was installed, gave Wayne Shriver and Henry Szuber a key to the lock on the gate so they could continue to use the access road to farm on the Szuber C parcel. Henry Szuber replaced the lock on the gate with interlocking locks and gave Shriver a key so he could access the Szuber C parcel. (Shriver Affidavit, ¶ 8).

{¶7} Shriver baled hay on the Szuber C parcel annually, from 1980 to 2017 and twice per year if weather permitted. Each bale measured five feet by six feet and weighed approximately one ton. Shriver baled approximately 120 to 160 bales on the first cut and, if there was a second cut, 60 to 80 bales. (Shriver Affidavit, ¶ 10.12).

{¶8} Shriver removed the baled hay from the property and fed it to his livestock pursuant to a verbal agreement with the owners of the Szuber C parcel that extended back to the 1980's and continued up to 2017, when Salvatore Petrash warned Shriver not to use the access road. (Miley Deposition, p. 35, line 23 to p. 36, line 1; p. 64, lines 11-22; p. 68). Shriver also tended the property by application of fertilizer and/or lime. (Miley Deposition, p. 36, lines 2-9). The current members of Szuber C. LTD did not directly work on the property, but do consider the work that Shriver did to have been done at their direction.

{¶9} Oil and gas companies used the same access road to maintain wells. Shriver used the front end loader bucket on his tractor to smooth out rutting on the easement caused by the oil company using the road and, as necessary, cleared trees from the easement that came down during storms (Shriver Affidavit, ¶ 15).

{¶10} Mark Beros helped Henry Szuber bale hay on the Szuber C parcel starting before 1981. (Plaintiff's Motion for Summary Judgment, Exhibit N, Beros Affidavit, ¶ 6) When Beros helped Szuber, they used the alleged easement to access the property, but even when he was not working with Szuber he noticed that Szuber was so frequently accessing the property that it appeared that he was there on a daily basis. (Beros Affidavit, ¶¶ 6, 7) Beros also observed Shriver's use of the access a regular basis and noted that Shriver did so without any effort to conceal his use of the access and use of the Szuber C parcel for agricultural purposes.  He concluded that the Shriver was present frequently enough to give the community at large notice that he was using the access road.  (Beros Affidavit, ¶¶ 11-14).

{¶11} Louis Kapolka was responsible for the handling the affairs of the Petrash/Neptune Property while he was an owner. (Petrash Deposition, p. 20, line 22 to p. 21, line 3).    In April 1995, Louis Kapolka sent a letter to the Tiger Oil company complaining that they were damaging the Petrash/Neptune parcel.  Kapolka arrived at this conclusion because it was his belief that no one other than Tiger Oil was using the roads. (Plaintiff's Motion for Summary Judgment, Exhibit Q).  In August 1995, Louis Kapolka notified the Guernsey County Sheriff that no one was authorized to enter the property.   (Plaintiff's Motion for Summary Judgment, Exhibit R).

{¶12} Sophia and Lewis Kapolka passed away and left the property to their children.  Henry Szuber died in 1995 and, also in 1995, Louis Kapolka sold his one-third interest in the Petrash/Neptune Parcel to his niece and nephew, Sandra Petrash and Louis Neptune.

{¶13} Shriver continued to use the access road and bale hay on the Szuber C parcel until the Fall of 2017 when he was confronted on the access road by Appellant, Salvatore Petrash, and was told that he did not have permission to use it . Salvatore Petrash told Shriver that if he continued to trespass, he would call the county Sherriff. (Shriver Affidavit, ¶ 16).

{¶14} Appellee filed a complaint alleging that an implied easement was created by prescription or by estoppel and that Appellants had impermissibly blocked access to the access road, thereby preventing them from accessing their property. Appellee sought a declaratory judgment that the easement existed, that Appellants had trespassed, and an injunction against Appellants preventing them from blocking access to the easement.

{¶15} Appellants answered and filed a counterclaim, contending that no easement existed and that Appellee was trespassing on the property.

{¶16} Both parties requested compensatory damages and Appellee further sought punitive damages.

{¶17} After discovery was complete, both parties filed motions for summary judgment, memoranda contra and replies. The trial court considered the record and arguments and found that there was no genuine issue of material fact and that Appellee was entitled to judgment on the first three counts of its complaint, establishing an easement by estoppel and by prescription and an injunction prohibiting Appellants' interference with Appellee's use of the easement. Appellee's motion for summary judgment on the issue of trespass was denied. The trial court "denied" Appellants' counterclaim in its entirety.

{¶18} After the trial court modified its order by including a finding that its judgment was a final appealable order and that there was no just cause for delay, the matter was appealed and, pursuant to the same order further proceedings regarding the claim of trespass were stayed.

{¶19} Appellants submit five assignments of error:

{¶20} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING SUMMARY JUDGMENT FOR APPELLEE WITHOUT COMPETENT AND CREDIBLE EVIDENCE OFFERED BY APPELLEE TO SUPPORT ITS FINDINGS."

{¶21} "II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ORDERING APPELLANTS' COUNTERCLAIMS WERE "DENIED" IN THEIR ENTIRETY."

{¶22} "III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON ITS CLAIM FOR PRESCRIPTIVE EASEMENT."

{¶23} "IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON ITS CLAIM FOR EASEMENT BY ESTOPPEL."

{¶24} "V. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON ITS CLAIM FOR INJUNCTIVE RELIEF."

## STANDARD OF REVIEW

{¶25} We review cases involving a grant of summary judgment using a de novo standard of review. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.,* 95 Ohio St.3d 314, 2002-

Ohio-2220, 767 N.E.2d 707, at ¶ 24. Summary judgment is appropriately granted when " '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' " *Esber Beverage Co. v. Labatt USA Operating Co.,* 138 Ohio St.3d 71, 2013-Ohio-4544, 3 N.E.3d 1173, ¶ 9, quoting *M.H. v. Cuyahoga Falls,* 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12.

**{¶26}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.,* 67 Ohio St.2d 427, 433, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning–Ferris Inds. of Ohio, Inc.,* 15 Ohio St.3d 321, 323, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.,* 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist. 1999).

**{¶27}** The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrates absence of a genuine issue of fact on a material element of the non-moving party's claim. *Wentling v. David Motor Coach Ltd.,* 5th Dist. No. 2017CA00190, 2018-Ohio-1618, 111 N.E.3d 610, ¶ 23, quoting *Dresher v. Burt,* 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once the moving party meets its initial

burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id*. The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Downtown Enterprises Co. v. Mullet*, 5th Dist. Holmes No. 17CA016, 2018-Ohio-3228, ¶ 50, quoting *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).

## ANALYSIS

**{¶28}** The parties contest whether an access road which has been used since at least 1954 has, based upon the facts, become an easement either through prescription or by estoppel. Appellants state that the only disputed facts are whether "the house was constructed between 1911 and 1931" and "that the access road in dispute was ever used before 1951." While these facts may be disputed, we find that neither is a material fact as neither "affects the outcome of the case under the applicable substantive law." *Russell, supra.* Our analysis will focus upon whether the judgment is inappropriate as a matter of law as applied to the undisputed facts.

## I.

**{¶29}** In the first assignment of error, Appellants contend that the" trial court committed prejudicial error in granting summary judgment for Appellee without competent and credible evidence offered by Appellee to support its findings" specifically asserting that "Appellee failed to provide any competent, credible evidence that would support the trial court's finding that 1) Appellee's predecessor-in-interest constructed a house in 1911 and 2) Appellee's predecessor-in-interest continued to access the Szuber

C property by the access road on Appellants' property for more than 21 years prior to August 5, 1951."

**{¶30}** Appellants are suggesting that this court should review the trial court's decision for competent and credible evidence in the context of a judgment for summary judgment and cites our decision in *Roubanes v. Brown*, 5th Dist. Holmes No. 11CA019, 2012-Ohio-1933, ¶ 31 to support their argument. First, we note that *Roubanes* addressed the result of a bench trial, a review of which requires an appellate court to grant deference to the trial courts' decision if it finds competent credible evidence in the record to support the trial court's decision. As this cause was decided on summary judgment, *Robanes* and the *competent and credible evidence* standard is inapplicable.

**{¶31}** Instead, an appellate court reviews the trial court's decision de novo, and owes no deference to the analysis of the trial court. As Appellants are applying the incorrect standard, we must reject the analysis and argument presented as inapposite.

**{¶32}** Even if we view Appellants' argument as proper and apply the correct standard, Appellants have offered no argument or explanation as to why these findings are genuine issues of material fact. "A dispute of fact is "material" if it affects the outcome of the litigation. The dispute is "genuine" if manifested by substantial evidence going beyond the mere allegations of the complaint." *Black v. McLaughlin*, 5th Dist. Richland No. CA-2338, 1985 WL 4718, (Dec. 19, 1985) *2. A material fact is an essential element of the claim or defense, as defined by the substantive law. Appellants contend that the trial court erred, but do not provide a rational for concluding that these facts were material and we will not fashion an argument for Appellants. It is not the duty of an Ohio appellate court to create arguments for the parties and search the record for evidence to support

them. *Washek v. Washek*, 5th Dist. Fairfield No. 18 CA 22, 2019-Ohio-1504, 2019 WL 1785411, ¶ 21 quoting *Sisson v. Ohio Department of Human Services*, 9th Dist. Medina No. 2949–M, 2000 WL 422396.

**{¶33}** Appellants' first assignment of error is denied.

## II.

**{¶34}** In their second assignment of error, Appellants contend that the trial court erred by ordering that their counterclaims for quiet title and trespass were denied in their entirety. Appellants cite no authority in support of their conclusion that the trial court erred, but refer to the fact that Szuber C was on the unpaved access road without their permission and then abruptly revise their argument to conclude that they are entitled to summary judgment.

**{¶35}** The trial court held that:

The Court finds that no genuine issues of material fact remain as to Plaintiffs(SIC) Counts One, Two and Three of their Complaint and that summary judgment is proper in this case. The Court hereby GRANTS Plaintiffs (SIC) Motion for Summary Judgment as to Counts One, Two and Three pursuant to Civ. R. 56 as it is clear there is an easement over the servient estate to use the Dominant Estate. Plaintiffs Motion for Summary Judgment as to Count Four, Trespass, is DENIED.

The· Court further DENIES Defendants' Counterclaim in its entirety.

**{¶36}** Appellee's complaint alleged creation of an easement by prescription in count one and by estoppel in count two. In count three it requested an injunction preventing Appellants "from denying the Plaintiff access over and through the Easement

for purposes of ingress and egress to the Dominant Estate". The grant of summary judgment to Appellee on these claims necessarily decides Appellants' claims for quiet title to the access road and trespass in Appellee's favor and renders further action regarding those claims unnecessary. The trial court may have been clearer by stating that the claims were dismissed, but it is evident from the briefs filed by the parties that the intent and the impact of the trial court's ruling was understood and did not prejudice Appellants' rights.

{¶37} Appellants' second assignment of error is denied.

### III.

{¶38} In their third assignment of error, Appellants contend that trial court erred by granting summary judgment on Szuber C's claim for a prescriptive easement because there is not clear and convincing evidence that Appellee and its predecessors-in-interest used the access road on Appellants' property openly, notoriously and continuously and that Appellants proved by clear and convincing evidence that Appellants and their predecessors-in-interest provided permission to Appellee's predecessors-in-interest to use the access road on Appellants' property.

{¶39} A landowner obtains an easement by prescription for a specific use of his neighbor's property when he uses that property in that manner: (a) openly; (b) notoriously; (c) adversely to the neighbor's property rights; (d) continuously; and (e) for at least twenty-one years. *Cf. Griffiths v. Schaefers* (App.1954), 72 Ohio Law Abs. 79, 80, 133 N.E.2d 394, 395; *Ericson v. Grenga* (App.1952), 70 Ohio Law Abs. 504, 506, 128 N.E.2d 668, 669.

**{¶40}** "Such use never ripens into a prescriptive right unless the use is adverse and not merely permissive." *Pennsylvania RR. Co.* at syllabus. "[W]here the owner of the servient estate claims that the use was permissive, he has the burden of showing it." *Pavey v. Vance* (1897), 56 Ohio St. 162, 46 N.E. 898, at paragraph one of the syllabus. If the burdened landowner can make such a showing, he can defeat the prescriptive easement claim of the other landowner."

**{¶41}** The record lacks clear and convincing evidence regarding the use of the property prior to 1954, but from that time until 1995 it is evident from the record that Henry Szuber used the access road on a regular basis with the permission of the owner of the servient estate, Lewis Kapolka and then his son, Louis J. Kapolka. Louis J. Kapolka confirmed that he and his father intended that the permission granted to Henry Szuber was perpetual.

**{¶42}** Because Henry Szuber had used the access road with the permission of the owners of the servient estate, and because the record does not permit us to arrive at a clear characterization of the use from 1911 to 1954, we agree that no prescriptive easement arose from the use within the time period of 1911 through 1995. However, the situation changed when Henry Szuber passed away in 1995.

**{¶43}** In 1995, while Henry Szuber was still working the Szuber parcel, Louis Kapolka installed a gate at the intersection of the main road and the access road. He provided Henry Szuber and Wayne Shriver a key consistent with the permission he provided Henry Szuber to use the access road to get to the fields. Henry Szuber's health failed and he passed away later in 1995. Louis Kapolka, a co-owner who handled all matters regarding the property, (Petrash Deposition, p. 20, line 22 to p. 21, line 3),

expressed the position of the owners of the Petrash/Neptune parcel that no one had permission to use the access road. He directed a letter to Tiger Oil company expressing his concern that the gate was often found open and the lock cut or removed and that they suspected Tiger, because "There is no longer anyone other than Tiger Oil using either of the roads * * * "(Plaintiff's Motion for Summary Judgment Exhibit Q, p. 2). In a letter to the Guernsey County Sheriff's department, he complained of vandalism and made it clear that "* * * no one, including Tiger Oil personnel, has permission to enter or use the roadways." (Plaintiff's Motion for Summary Judgment Exhibit R). Louis Kapolka offered to appear at the sheriff's office and file a complaint if any trespasser was apprehended.

{¶44} From these letters it is evident that Appellants did not believe that Szuber C had permission to use the access road, yet Wayne Shriver continued to use the access road to reach the Szuber C parcel on behalf of Szuber C.

{¶45} Wayne Shriver farmed the Szuber C parcel under an agreement with the owners since the 80s. (Miley Deposition, p. 67, lines 13 to p. 68, line 24). Shriver baled and removed the hay to feed his livestock and the owners would receive the benefit of maintaining the property tax discount granted to property used for agricultural purposes. (Miley Deposition, p. 35, line 8 to page 36, line 1; p. 36, lines 19-24). He used the access road across the servient property to reach the Szuber parcel to cut hay, fertilize and otherwise maintain the property.

{¶46} Shriver entered the property so frequently that the neighbors noticed his movement. Mark Beros, a neighbor who lived "immediately across State Route 313 from the northeast corner of the Petrash/Neptune Property" knew that Wayne Shriver

conducted general agricultural activities on the Szuber C property on behalf of Szuber C, Ltd. (Plaintiff's Motion for Summary Judgment, Exhibit N, Beros Affidavit, ¶¶ 10-11). After he returned to his home in 1986, he witnessed Shriver using the easement to access the property on a regular basis and characterized Shriver's use of the access road as "easily visible by myself and others in the area." He concluded that Shriver did not attempt to conceal his use of the property and he believed it was common knowledge in the community that Shriver use the easement to access the Szuber C property. *Id.* at ¶¶ 11-14.

{¶47} Wayne Shriver confirmed that he baled hay on this property beginning in the 1980s and continuing on an annual basis until 2017 when he was prohibited from entering the property by Salvatore Petrash. He confirmed that in almost every year, weather permitting he baled two cuts of hay on the property. When he baled the hay, he would access the property by the access road on one or two days to cut the hay, then one day to fluff the hay, and one to bale the hay. He baled the hay on another day and used two to four days remove bales of hay from the property. Depending on the number of cuts of a he would remove anywhere from 120 to 240 bales of hay per year. Each bale weighed approximately one ton and was five feet wide and six feet high. (Plaintiff's Motion for Summary Judgment, Exhibit O, Shriver Affidavit, ¶ 11-13).

{¶48} Shriver also maintain the easement. He noted the easement would often be rutted due to oil and gas companies using the easement for oil and gas well maintenance. He confirmed that on multiple occasions "I used the front end loader bucket on my tractor to smooth out riding on the easement. Furthermore, on multiple occasions

I have cleared the easement of trees which have fallen across the easement due to storms or other weather." (*Id.* at, ¶ 15).

**{¶49}** In the Fall of 2017 Salvatore Petrash prohibited Shriver from using access road and told him that he would be trespassing if he did. He was threatened with legal action and, since being confronted by Mr. Petrash, he is not been on the property. (*Id.* at, ¶¶ 16-17).

**{¶50}** Appellants contend that they have "proved by clear and convincing evidence that Appellants and their predecessors-in-interest provided permission to Appellee's predecessors-in-interest to use the access road on Appellants' property." They conclude that Shriver's use of the road was "consistent to Henry Szuber's permissive use and Shriver's smoothing of ruts and removing branches was mere maintenance of the unpaved access road." Appellants' conclusion that the permission granted to Henry Szuber survived his death is not supported by legal authority and is controverted by the letters Kapolka sent to Tiger Oil and the Guernsey County Sheriff that no one has permission to enter the property. The letter of August 6, 1995 makes it clear that "no one, including Tiger Oil personnel, has permission to enter or use the roadways." (Plaintiff's Motion for Summary Judgment, Exhibit R). Appellants offers nothing to refute this evidence and we cannot ignore it. Use of the access road by Szuber C or by Shriver was not permitted.

**{¶51}** Appellants also argue that no prescriptive easement exists because "there is not clear and convincing evidence that Appellee and its predecessors-in-interest used the access road on Appellants' property openly and notoriously." The record provides substantial evidence that the access road was used by Szuber, then Shriver without any

attempted concealment and was known to some who might reasonably be expected to communicate their knowledge to the owner or was so patent that the true owner of the property could not be deceived as to the property's use. *McKenna v. Boyce*, 5th Dist. Muskingum No. CT 2012-0014, 2012-Ohio-5163, 2012 WL 5438991. The occupancy gave notice to the real owner of the extent of the adverse claim. *Franklin v. Massillon Homes*, II, LLC, 184 Ohio App.3d 455, 2009-Ohio-5487, 921 N.E.2d 314 (5th Dist. Stark). *Wischt v. Heirs of Mourer,* 5th Dist. No. 17 CA 8, 2017-Ohio-8236, 98 N.E.3d 1307, ¶ 31.

**{¶52}** Shriver used the road so frequently from 1986 through 2017, that Mark Beros noticed and was willing to state that it was known in the community. The same letters that purported to withdraw consent to use the access roads revealed that Appellants were aware that the access road was being used without their consent and documents their attempt to forbid it. Shriver's use of the road continued for over twenty-one years during which he not only performed maintenance on the access road, but he also cut and removed hundreds of bales of hay.

**{¶53}** Shriver clearly did not attempt to conceal his use of the road at any time, and his use was sufficiently evident to put witnesses on notice that he was using the access road. Not only would the transport of several hundred one ton bales of hay be evident, but the fact that a large field was regularly mowed would serve as evidence that the access road, the only access to the Szuber C parcel was utilized to reach that area. We find that Appellee's use was open and notorious.

**{¶54}** Appellants also contend that Appellee failed to prove that the use existed for twenty-one continuous years, claiming that the failure to promptly transfer the title of the property from the estate of Henry Szuber to Szuber C resulted in a fifteen year

abandonment and that there was insufficient connection between Szuber C and Shriver to credit his use to the owners of the Szuber C parcel.

{¶55} The exhibits in the record show that the Szuber C parcel passed to the heirs by intestate succession, so the heirs took "title to the real estate immediately upon the death of" Henry Szuber. *Winters Nat. Bank & Tr. Co. v. Riffe*, 2 Ohio St.2d 72, 76, 206 N.E.2d 212, 216 (1965). The property was then transferred to Szuber C in 2015 from the heirs of Henry Szuber. The chain of title cannot be used to establish an abandonment of the easement as there are no gap and it is evident in the record that Shriver was using the access road at the behest of Szuber C and its predecessor's in interest for over twenty-one continuous years.

{¶56} Henry Shriver cut hay on the Szuber C parcel pursuant to an agreement that began in the 80s and continued until he was barred from the property in 2017. Karen Miley, representative for Szuber C, described the agreement as consisting of Shriver continuing to cut, bale and remove the hay from the Szuber C parcel for his use so that the owner of the parcel could continue to benefit from the CAUV reduction in property taxes. In the context of this case, that oral agreement creates a landlord tenant agreement that can be relied upon by Szuber C to fulfill the requirement of a use that continued for over twenty-one years. ""Possession of a tenant is regarded as the possession of the landlord, [and] hence there may be tacking to establish the landlord's title, although the land is occupied by tenants." *Ferguson v. Zimmerman,* 2nd Dist. Montgomery No. 9426, 1986 WL 878, *9, citing *Powers v. Malavazos*, 25 Ohio App. 450, 158 N.E. 654 (4th Dist. 1927); *USA Cartage Leasing, LLC v. Baer,* 202 Md.App. 138, 204, 32 A.3d 88 (Md.App.2011), quoting  652 2 C.J.S. Adverse Possession, Section 47

(1941) (stating that "tenant may adversely possess land 'on behalf of' landlord"); *Steinichen v. Stancil,* 284 Ga. 580, 582, 669 S.E.2d 109 (2008) (determining that tenants' use inured to landlord and subsequent owner could tack tenants' use in order to satisfy continuous possession for statutory period); *see generally Eddyville Corp. v. Relyea,* 35 A.D.3d 1063, 1066–1067, 827 N.Y.S.2d 315 (2006); *Ebenhoh v. Hodgman,* 642 N.W.2d 104, 109 (Minn.App.2002). *Cline v. Rogers Farm Enterprises, LLC*, 4th Dist. No. 16CA7, 2017-Ohio-1379, 87 N.E.3d 637, ¶ 41.

**{¶57}** Shriver farmed the property pursuant to an oral agreement with the owner of the property for a continuous period of more than twenty-one years and he used the access road in question to reach the Szuber C parcel. The use of the access road to that property was open, notorious and adverse to the owner's interest.

**{¶58}** For those reasons Appellants' third assignment of error is overruled.

## IV.

**{¶59}** In their fourth assignment of error, Appellants claim that the trial court erred by granting Appellee's motion for summary judgment on its claim for easement by estoppel. In this assignment of error Appellants contend that trial court erred by finding: Appellee proved by clear and convincing evidence that use of the access road on Appellants' property was apparent and not hidden from a third-party purchaser; that Appellee proved by clear and convincing evidence use of the access road on Appellants' property would be reasonably foreseeable that the user of the land under certain circumstances would substantially change his/her position; that Appellee proved by clear and convincing evidence that Appellants or their predecessors-in-interest represented that an easement existed; that Appellee proved by clear and convincing

evidence that Appellee and its predecessors-in-interest expended some proof of improving the Appellants property.

**{¶60}** Our analysis of this assignment of error is limited to use described in the record prior to 1995 because, as noted in our analysis of the third assignment of error, use of the access road was prohibited after August 1995 and, perhaps as early as April 1995.

**{¶61}** Easement by estoppel is recognized in Ohio under the following conditions: 1) it is apparent and not hidden to a third-party purchaser 2) it would be reasonably foreseeable that the user of land under certain circumstances would substantially change his position 3) the person seeking to establish the easement expends some proof of improving the property which is subject to the easement and 4) there has been a representation by the servient estate that an easement exists. *Roubanes v. Brown*, 5th Dist. Holmes No. 11CA019, 2012-Ohio-1933, ¶ 31.

## APPARENT USE

**{¶62}** Appellants argue that the only specific reference to "apparent" and "plainly visible" use of the unpaved access road on the Petrash/Neptune property occurred in 1954 when Steve Modock dumped gravel on the access road and spread it with the help of Lewis and Louis Kapolka. Appellants' characterization of the phrase "apparent and not hidden" is much narrower that that described in relevant precedent.

> It has been held that in order for a use to be apparent it must be "plainly visible," *Frate v. Rimenik* (1926), 115 Ohio St. 11, 152 N.E. 14, paragraph two of the syllabus, or openly and plainly attached to or upon the land, *Baker, supra,* 56 Ohio St. at 475, 47 N.E. 653. See, also, **714

*Benninghoff v. Skinner* (1938), 63 Ohio App. 184, 25 N.E.2d 948 [16 O.O. 473]. There is also case law which instructs us that an easement may be apparent even though it is not readily visible if it may be seen or known on a careful inspection of the premises by a person ordinarily conversant with the subject. *Blanchet v. Ottawa Hills Co.* (1939), 63 Ohio App. 177, 181– 182, 25 N.E.2d 861 [16 O.O. 470].

*Campbell v. Great Miami Aerie No. 2309, Fraternal Order of Eagles*, 15 Ohio St.3d 79, 81, 472 N.E.2d 711, (1984).

**{¶63}** The access road in this case has been in use at least since 1954 when it was used as an access road to the home that was located on the Szuber C parcel and its use continued after the home was abandoned. The record contains repeated reference to the access road and its use by Modock, Szuber, Shriver and Tiger Oil and no comment that the path of the road was concealed or difficult to locate. Nor is there any evidence submitted by Appellants that the road is invisible or otherwise not apparent.

**{¶64}** For these reasons we find that the road that comprises the easement is apparent.

### CHANGE OF POSITION/IMPROVEMENT TO PROPERTY

**{¶65}** Appellants also argue that there is no evidence that Appellee changed its position or made an improvement to the property sufficient to qualify them for easement by estoppel.

Normally, the change in position that triggers the application of the rule stated in [Section 2.10(1) ] is an investment in improvements either to the servient estate or to the other land of the investor. * * * *Failure to object*

*to an investment made in improvements to land by another may give rise to*

*an estoppel against the owner or occupier of the land, if the owner or*

*occupier knows or reasonably should know that the investment is being*

*made on the basis of a mistaken belief that the investor has a nonrevokable*

*right to use the land.* (Emphasis added.) Restatement of the Law 3d,

Property (Servitudes) (2000), Section 2.10, Comment e.

*McCumbers v. Puckett*, 12th Dist. No. CA2008-11-038, 183 Ohio App.3d 762, 2009-Ohio-4465, 918 N.E.2d 1046, ¶ 21.

**{¶66}** This court has recognized that an easement by estoppel does not require an investment in the servient estate. "Locating improvements on the dominant estate in order to take advantage of the represented easement has been held to satisfy the reliance requirement. Expending money to repair or improve a servient estate also evinces reliance." *Roubanes v. Brown,* 5th Dist. Holmes No. 11CA019, 2012-Ohio-1933, ¶ 29.

**{¶67}** Stephen Modock made improvements to the property by spreading gravel on the road to improve his access and Lewis Kapolka, owner of the servient estate at the time and his son, Louis, assisted with the application of the gravel. Modock resided in a home located on the Szuber C parcel that was landlocked with the exception of this access road. The Kapolka's reasonably should have known that Modock was making this investment on the basis of the belief that he possessed an irrevocable right to use the land to access his home.

**{¶68}** Henry Szuber improved the dominant estate by planting and harvesting crops such as corn and hay. The Kapolka's did not object to the use of the access road

for that purpose and Szuber reasonably relied on his perception that the easement was perpetual else he would not have invested the time to plant crops.

**{¶69}** The evidence in the record that Appellee's predecessors in title made improvements to the easement and the dominant estate is not refuted by any evidence offered by Appellee, so we find that element of easement by estoppel is established.

## EXISTENCE OF EASEMENT

**{¶70}** Appellants next contend there is insufficient evidence to establish that its predecessors-in-interest admitted the existence of an easement. Appellants argues that the permission granted to Henry Zuber was not recognition of an easement and that the application of the gravel on the access road was not recognition of an easement because there was no evidence for the cost of the gravel, the extent to which was spread or the duration for which it existed. Further, the gravel was not for the "exclusive use of Modock." (Appellants' Brief, p. 25).

*{¶71}* Louis Kapolka granted Henry Szuber the right to use this access road perpetually and, when Louis Kapolka passed away, his son, Lewis Kapolka, confirmed that Henry Szuber was granted the right to use the road to access the Szuber C parcel and that the grant was perpetual. Neither used the term "easement," but they admitted that an access road crossed the servient parcel and opened on the dominant parcel. Not only was the Kapolka family aware of the existence of the easement, they expressly confirmed that it existed by pledging that the permission granted to Szuber was perpetual. The status of this access road prior to Kapolka's grant of permission is not described in the record, but the Kapolka acknowledged that they intended their permission to be permanent, they and their successors cannot claim that they were not

aware of the easement. *See Varjaski v. Pearch, 7th Dist. Mahoning No. 04 MA 235, 2006-Ohio-5268, ¶ 13* (License to use property becomes an easement when the license is intended to be permanent).

**{¶72}** We find the Appellants' conclusions regarding the gravel to be unpersuasive.  As we have concluded, reliance can be established by proof of improvement on either the dominant or the servient estate, so the specific location of gravel, the breadth of the access road gravel and the cost are of no consequence.  And, contrary to Appellants' conclusion, the elements of an easement by estoppel do not include a requirement that an improvement was completed for the exclusive use of the dominant estate.

**{¶73}**  The fourth assignment of error is denied.

**V.**

**{¶74}**  Appellants' fifth assignment of error asserts the trial court erred by granting Appellee's motion for summary judgment on its claim for injunctive relief. Appellants contend that because there is no easement, there is no basis for an injunctive remedy and that Appellee had not shown any irreparable harm suffered that would warrant the grant of an injunction.

**{¶75}**  Appellee alleged in its complaint that Appellants "knowingly placed locked gates, barriers, and/or fences blocking access to the easement on the servient estate so that the plaintiff is unable to access the dominant estate by use of the easement." (Complaint, Dec. 19, 2019, ¶ 44). In response, Appellants denied there was an easement but admitted that they used and exercised their rights and interests of their property.  The record demonstrates that the Appellants obstructed the easement and solicited the

assistance of the Guernsey County Sheriff to prevent anyone but Appellants from accessing the property across that easement.

{¶76} Appellee ha established an easement exists, consequently Appellee is entitled to access and use of that easement. "The law is well-settled, * * * that injunctive relief is available to the owner of an easement against unwarranted interference with an obstruction of the easement by the owner of the fee." *Langhorst v. Riethmiller,* 52 Ohio App.2d 137, 141, 368 N.E.2d 328, 331 (1st Dist.1977). As noted by the court in the *Langhorst,* "because [Appellee] would be unable to enjoy at the easement unless injunctive relief is granted, we find that the trial court correctly enjoined Appellants from obstructing [Appellee's] easement in any way." *Id.*

{¶77} Appellants' fifth assignment of error is overruled.

{¶78} The decision of the Guernsey County Court of Common Pleas is affirmed.

By: Baldwin, J.

Wise, Earle, P.J. and

Gwin, J. concur.